JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JANE DOE

**(b)** County of Residence of First Listed Plaintiff   Lafayette
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Weitzner&Jonas, PA 49 NW 3rd Avenue, Miami FL 33128.
305-527-6465;  Law Office of Todd G. Scher, PL 1722 Sheridan Street
#346, Hollywood, FL 33020.  754-263-2349

## DEFENDANTS

RICHARD L. SWEARINGEN, Commissioner, FDLE

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Department of Legal Affairs

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff* *(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY

- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sec. 1983
Brief description of cause:
Verified Complaint for Declaratory and Injunctive Relief

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
02/04/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Valerie Jonas

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

| | ) | |
|---|---|---|
| Jane Doe | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. 21-cv-_____ |
| | ) | |
| Richard L. Swearingen, Commissioner, | ) | |
| Florida Department of Law Enforcement | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> Richard L. Swearingen, Commissioner
> Florida Department of Law Enforcement
> 2331 Phillips Road
> Tallahassee, FL 32308

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Valerie Jonas
> Weitzner & Jonas, P.A.
> 49 N.W. 3rd Avenue, Suite 200
> Miami, FL 33128

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____February 4, 2021____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 21-cv- _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

_____
)
**JANE DOE,**                                                                     )
)
    _Plaintiff,_                                                              )
)
v.                                                                               )         **Civil Case No.**
)
)
**RICHARD L. SWEARINGEN,**                                 )
)
    _Defendant._                                                           )
_____ )

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1. The Florida Sex Offender Registration Law, Section 943.0435, Florida Statutes (hereinafter "FSORNA") first went into effect on October 1, 1997. At that time, it required one-time in-person registration of basic identifying information and crime facts, made available to the public through a toll-free telephone number.

2. Through multiple amendments in the 24 years since FSORNA's enactment, the Florida Legislature has drastically increased the number and weight of the burdens FSORNA imposes, transforming it into a trip-wired maze of restrictions and affirmative obligations resembling penal supervision for life, with virtually strict liability for any violation of its provisions, a minimum mandatory six-

1

month sentence of GPS-monitored community control and a maximum sentence of five years in prison. Significantly, the Florida Legislature has never advanced any empirical basis to believe that any one of these additional burdens would reduce sexual reoffense by registrants or would otherwise protect the public from sexual harm.

3. While increasing the weight and number of burdens, the Florida Legislature also amplified FSORNA's notification provisions, leading to repeated police warnings to neighbors, repeated police presence at a registrant's home, warnings to online networking websites, warnings emailed to the public, warnings to school staff and students, and a Google-indexed online registry warning to anyone who types in the registrant's name. This aggressive notification has caused housing and employment instability, as well as stigmatization, ostracism, harassment, and vigilantism against registrants *and* their families.

4. FSORNA is premised on the notion that convicted sex offenders categorically represent an intractably high risk of sexual reoffense. This premise is widely acknowledged now to be false: the average rate of registrant reoffense begins low – 5.3% within 3 years, compared with 68% by non-sex offenders – and declines every year thereafter without reoffense. The average rate of reoffense by female registrants like Jane Doe is considerably lower – 1.8% within 5 years. Furthermore, an individual registrant's actual risk of reoffense is easily

ascertainable through risk assessment instruments in universal use, including in Florida, and through clinical observation and psychological testing routinely used by certified experts around the country, including in judicial proceedings in Florida. Finally, long-term studies have established that statutes like FSORNA do nothing to decrease the already-low rate of sexual reoffense. Indeed, there is compelling evidence that aggressive notification statutes like FSORNA increase the reoffense rate by creating barriers to community reintegration, employment and housing. Thus, FSORNA, based on the false belief that it would mitigate an egregiously inflated risk of reoffense, is irrational, as evidenced by the facts of Plaintiff's complaint.

5. Plaintiff Jane Doe has been registered as a sex offender for less than four years preceding this Complaint. She has completed her sentence and seeks to be free from the requirements of FSORNA, because of  its 1) ever-increasing punitive impacts, 2) arbitrary and unreasonable deprivations of fundamental liberties, 3) irrebuttable yet demonstrably erroneous presumption that she represents a grave danger to the public for at least 25 years, 4) vague requirements leading to confusion about her obligations and to arbitrary enforcement, and 5) felony conviction and mandatory sentence for even inadvertent violations of any one of dozens of affirmative obligations. She brings this action for declaratory relief and seeks to enjoin enforcement of FSORNA 2018 against her.

## Jurisdiction and Venue

3

6. This action arises under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Supplemental jurisdiction over state law claims is authorized by 28 U.S.C. § 1367.

9. Venue properly lies within this District under 28 U.S.C. § 1391(b)(2), because both Plaintiff and Defendant reside in this District.

<u>Parties</u>

10. Jane Doe, 30 years old, was convicted for consensual sexual relations with a 16-year-old boy when she was 24. She was sentenced to probation, which she successfully completed, including a sex offender treatment program. She poses virtually no risk of reoffense. She is mother to a 12-year-old daughter and three-year-old twins, a boy and a girl. She is barred from participating in their education and extra-curricular activities as a result of her status. She will be unable to take them for long weekends from home without making one or more in-person reports and subjected to a minimum-mandatory criminal sentence if she inadvertently fails to comply with reporting requirements that are too vague to understand and are enforced arbitrarily. The in-person reporting requirement generally, having to make in-person reports to the sheriff within 48 hours of any change to an ever-lengthening list of identifying information – such as hair

4

color, weight, fresh scars, short-term car rentals, 3 days away from home in a year – is onerous, costly and time-consuming, forcing her to lose work and wages for the rest of her life. Her children, who live in a small town, will be ostracized, harassed, humiliated and shunned as the result of their mother's status. She has been harassed and threatened at work as the result of her status. She lives in fear that she and her family will fall victim to widely-reported vigilantism against registrants, which is facilitated by FSORNA's aggressive notification of her whereabouts. She is a "sexual offender" as defined by § 943.0435(1)(h), Florida Statutes.

11. Defendant Richard L. Swearingen is the Commissioner (also known as the

12. Executive Director) of the Florida Department of Law Enforcement (FDLE), which is responsible for implementing many of Florida's registration requirements. These requirements include creation and maintenance of the registry and the website containing information about the registrants; creation and maintenance of the forms specifying information that must be registered; and disclosure of the information to law enforcement agencies, commercial social networking websites, institutions of higher education and the public. He has statutory authority to implement the relief Plaintiff seeks. *See* Fla. Stat. §943.03, Fla. Stat. (2018). References to the Commissioner or the FDLE in this Complaint are referring to this Defendant. At all relevant times, Defendant Swearingen and

5

his agents acted, and continue to act, under color of state law.

## **GENERAL FACTS**

### **Historical Evolution of FSORNA**

### **1997 Version of FSORNA**

13. Prior to 1997, Florida had no sex offender registry or notification laws. The Florida Legislature first enacted FSORNA in 1997. Fla. Stat. § 943.0435, Fla. Stat. (1997). It applied retroactively to persons whose qualifying offenses occurred before 1997, where their sanctions were completed on or after October 1, 1997.[1] It required persons with qualifying convictions[2] to register with their local sheriff in person, within 48 hours after establishing permanent or temporary residence in Florida,[3] and to provide limited identifying information: name, date of birth, race, sex, height, weight, hair and eye color, scars, tattoos or other identifying marks, address of permanent or temporary residence, date and place of each conviction, with a brief description of the crime or crimes committed by the registrant. Under FSORNA, the FDLE was directed to provide a photograph

---

[1] Ch. 97-299, § 8, Laws of Fla., eff. Oct. 1, 1997.

[2] 1997 Fla. Stat. §943.0435(1)(a) "Sex offender" means a person who has been. . . [c]onvicted of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or analogous offenses in another jurisdiction: § 787.025, chapter 794, § 796.03, § 800.04, § 827.071, § 847.0133, § 847.0135, § 847.0145, or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this subparagraph.

[3] 1997 Fla. Stat. § 943.0435(2) defined a temporary residence as where the sex offender abides, lodges, or resides in a place for 2 consecutive weeks or less, excluding a stay of 2 consecutive weeks or less at a different residence due to a vacation or an emergency or special circumstance that requires the sex offender to leave his or her place of permanent or temporary residence for 2 weeks or less. 1997 Fla. Stat. § 943.0435(2) defines a permanent residence if the sex offender abides, lodges, or resides in a place for more than 2 consecutive weeks.

6

of the registrant, and a summary of her sexual offense to the public on request. Fingerprints were also taken upon this initial registration. *See* Fla. Stat. §943.0435(2), Fla. Stat. (1997). Change to the registrant's permanent or temporary address was to be reported in person within 48 hours to the Department of Highway Safety and Motor Vehicles ("DHSMV"). Failure to comply was a third-degree felony. Public notification was accomplished through a toll-free telephone number the public could use to inquire about an individual on the registry. *See* Fla. Stat. §943.043, Fla. Stat. (1997). FDLE was required to furnish anyone who asked a photo of a registrant and a summary of publicly-available information. § 943.043(3), Fla. Stat. (1997).

## 2020 Version of FSORNA: From Regulation to Punishment

14. FSORNA has evolved from a useful tool for police to investigate sex crimes, and for the public to take precautions around those who had committed them, into a labyrinthine trip-wired maze of ever-increasing affirmative requirements and ever-widening notification that lasts for life, regardless of the nature of the qualifying offense, or the individual's actual or actuarial risk of reoffense.

## Registration Requirements: From Minimal to Engulfing

15. As a result of multiple amendments since 1997,[4] registration now entails an

---

[4] FSORNA was amended in 1998, 2000, 2002, 2004, 2005, 2007, 2009, 2010, 2012, 2013, 2014, 2016, 2017, and 2018. The legislative history of these amendments does not reflect an empirical basis for any of them. Attached to this Complaint is an Appendix reflecting the changes made in each succeeding year.

engulfing number of mandatory conditions: in-person reporting on an ever-lengthening list of occasions within ever-shortening deadlines; to multiple law enforcement agencies; of a burgeoning amount of personal information; as well as any actual or intended changes to this information; regardless of the registrant's qualifying offense or risk to reoffend[5]; for the rest of her life.[6] Failure to comply with any of these requirements is a strict liability[9] third-degree felony, punishable by a mandatory-minimum of six months GPS-monitored community control, and a maximum of five years in prison and a $5,000 fine.[10] Conviction for failure to register is no remote contingency: in FY 2017-2018 alone, 1,283 registrants out of 25,076 residing in Florida – .05% of all registrants in the community -- were convicted of violating one of the dozens of FSORNA's requirements, 45% of whom were sentenced to prison, 31% to jail.[7] A registrant may invoke lack of notice as a defense for a first offense only. Fla. Stat. § 943.0435(9)(d), Fla. Stat. (2020).[8]

---

[5] §§ 943.0435(4)(c), (8), (9)(a), (14)(c)4; 943.0437(1), (2), (3), Fla. Stat. (2020).

[6] § 943.0435(11), Fla. Stat. (2018) establishes lifetime registration unless the sexual offender has received a full pardon or has had a conviction set aside. After being lawfully released from confinement, supervision, or sanction, whichever is later, for at least 25 years, some registrants, based on the nature of their qualifying offenses, may petition for removal from the registry, but only if they have not been arrested for any felony or misdemeanor since release. Other registrants must remain on the registry for life. The decision to grant removal is wholly within the trial court's discretion.

[7] https://oppaga.fl.gov/Documents/Reports/18-08.pdf., p. 10

[8] § 943.0435(9)(a) & (14)(c)(4), Fla. Stat. (2020). For a second offense, the mandatory-minimum sentence is one year of GPS-monitored probation; for a third, two years of GPS-monitored probation. § 943.0435(9)(b), Fla. Stat. (2020).

16. **Duration.** FSORNA 1997, which required only one-time in-person registration, was silent as to duration. FSORNA 1998 specified life-time registration, but with eligibility for removal twenty years after release from prison, providing no arrests in the interim.[9] FSORNA 2020 bars large categories of registrants from ever seeking removal,[10] postpones the count-down for eligibility from prison release to release from all supervision,[11] and extends the wait for eligibility from 20 to 25 years.[12] FSORNA 2020 also expands the conditions for removal beyond the no-arrest provision, requiring compliance with various federal laws and standards, a judicial determination that the registrant is not a threat, and three weeks notice to the State so it can present opposing evidence.[13]

17. **Number of qualifying offenses.** The 1997 version of FSORNA had eight qualifying offenses. § 943.0435(1)(a)1., Fla. Stat. (1997). The 2020 version has twenty qualifying offenses,[14] vastly increasing the numbers of people required to register. The legislative history does not explain the reason for this vast expansion of qualifying offenses. Because the registration statute now applies to twenty offenses, is fully retroactive, and applies for life, as of June 2018, the number of

---

[9] § 943.0435(11), Fla. Stat. (1998).

[10] § 943.0435(11)(a)1.(a.-i.), Fla. Stat. (2020).

[11] § 943.0435(11)(a), Fla. Stat. (2020).

[12] § 943.0435(11)(a)1., Fla. Stat. (2020).

[13] § 943.0435(11)(a)3., Fla. Stat. (2020).

[14] *See* §§ 943.0435(1)(h)1.a.(I), b., c., d.(I-V), Fla. Stat. (2020).

persons on the registry, who reside in Florida and have completed all aspects of their sentence, including post-incarceration supervision, was 25,076.[15]

18. **Re-Registration**. The 1997 version of FSORNA required one in-person registration report, within 48 hours of release from prison, at the sheriff's office. There was no re-registration requirement. FSORNA 2020 requires re-registration in-person semi-annually or quarterly, at the sheriff's office, whether or not there have been any changes to report in the interim. § 943.0435(14)(a), (b), Fla. Stat. (2018).

19. **Volume of information disclosed at registration.** The 1997 version of FSORNA required disclosure of a limited amount of identifying information – name, date of birth, race and sex, height and weight, hair and eye color, tattoos, temporary or permanent address, date and place of conviction, brief description of offense, photograph and fingerprints. § 943.0435(2), Fla. Stat. (1997).

20. FSORNA 2020 requires vastly more information to be disclosed: employment, identifying information for all vehicles[16] and vessels,[17] telephone numbers,

---

[15] https://oppaga.fl.gov/Documents/Reports/18-08.pdf.

[16] "[M]ake model, color, vehicle identification number (Vin), and license tag number of all vehicles. . ." § 943.0435(2)(b), Fla. Stat. (2020).

[17] "[V]essel, live-aboard vessel or houseboat residence identifiers (hull identification number, registration number, manufacturer's serial number, name of vessel, and physical description. . ." *Id.*

email addresses, Internet usernames, status[18] at institutions of higher learning,[19] professional licenses, immigration status, passport, palm prints, genetic markers. § 943.0435(2)(b), Fla. Stat. (2020). Expanding the information required to be disclosed at initial registration may not itself be viewed as terribly onerous. But because FSORNA 2020 requires prompt in-person reporting of **any changes** to information disclosed at registration, § 943.0435(2)(a)2., Fla. Stat. (2020), requiring additional information at initial registration multiplies the number of in- person reporting requirements.

21. **Possession or potential access to vehicles.** The 1997 version did not require disclosure of even the registrant's own vehicle. FSORNA 2020 requires not only this, § 943.9435(2)(b), Fla. Stat. (2020), but in-person disclosure of any vehicles leased, rented, borrowed or otherwise possessed by the registrant **and any co-inhabitant,** including those of her spouse and kids, and those of their friends and family members.[20] She must also report in-person the presence of any vehicles **parked at her home for 5 days** or more, even if she resides in a multi-

---

[18] Enrollment (whether in a traditional classroom setting or online), employment (whether paid or volunteer). § 775.21(2)(a), Fla. Stat. (2020).

[19] "[A] career center, a community college, a college, a state university, or an independent postsecondary institution." § 775.21(2)(i), Fla. Stat. (2020).

[20] § 943.0435(2)(b)3., Fla. Stat. (2020). "Vehicles owned" is very broadly defined as any motor vehicle "which is registered, coregistered, leased, titled or rented" by a sexual offender; "a rented vehicle" that a sexual offender "is authorized to drive"; or a vehicle for which the offender "is insured as a driver." It also includes any motor vehicle that "is registered, coregistered, leased, titled or rented by a person or persons residing at a sexual offender's "permanent residence for 5 or more consecutive days." *See* §§ 943.0435 (1)(h) & 775.21 (2)(p), Fla. Stat. (2020).

unit dwelling and has no means of access to those vehicles. § 943.0435(2)(b)3., Fla. Stat. (2020). This means she must count the number of days every vehicle is parked at her home, so she can report it if it stays there 5 days or more.

22. **Branded driver's license or other State identification.** FSORNA 1997 did not require a registrant to obtain a driver's license or other state-issued identification. FSORNA 2020 requires every registrant to obtain and to pay the associated costs for a driver's license or other state-issued identification, to report any changes to DSHMV, and to report to the sheriff when a driver's license or state identification is subject to renewal. § 943.0435(2)(b)3, Fla. Stat. (2020). Furthermore, her driver's license or other state identification must now display her status as a sex offender. § 322.41(3), Fla. Stat. (2020). Because a driver's license is the document most frequently required to prove identity to the public, the registrant's public identity is fused with her status in even the most pedestrian transactions.

23. **Restrictions on internet use.** FSORNA1997 imposed no restriction on a registrant's use of the Internet. FSORNA 2020 requires all registrants to report online within 48 hours their use of any Internet identifier or username in connection with person-to-person online interactions, excepting commercial and political speech. § 943.0435(4)(e)1., Fla. Stat. (2020). Registrants must also report

12

online within 48 hours of changing or adding an email address. *Id*.

24. **In-person report of changes to identifying information**. The 1997 version required in-person reporting to the DHSMV within 48 hours of changing a temporary or permanent address. § 943.0435, Fla. Stat. (2020).

25. In contrast, FSORNA 2020 requires in-person reporting within 48 hours to the sheriff and/or the DHSMV of any change to almost every item in the mountain of information divulged upon initial registration: a new tattoo (or removal of an old one) or a fresh scar; change of weight or hair color; a new or additional job, a new professional license, a change in status at an institution of higher education,[21] a new or newly-colored car or boat, known future temporary residences, return from temporary residences, etc. § 943.0435(2)(a)2, (4)(a), Fla. Stat. (2020). As noted, registrants expend considerable time and energy making multiple in-person reports of trivial changes to inessential information, even though the changes must be re-reported at re-registration. Notably, each county has only one sheriff's office. Because many Florida counties are vast and sprawling, many registrants live and work at great distances from the county's only sheriff's office. Furthermore, the sheriff's offices are not necessarily open to registrants every day during business hours, but instead for fewer days and fewer hours, making it even more challenging to meet the 48-hour in-person reporting

---

[21] This includes commencement or termination of enrollment (even for online classes), a change in location of enrollment, a change in employment, paid or volunteer. § 775.21(2)(a), Fla. Stat. (2020).

requirement. Therefore, the burden of in-person reporting multiple times a year is heavy.

26. **Transient Registration**. The 1997 version of FSORNA had no reporting requirement for "transient" registrants. Since then, proliferating and overlapping state, county and local sex offender residence restrictions, in combination with the stigmatizing impact of aggressive notification, have created a crisis of homelessness among registrants, with thousands sleeping outside in notorious encampments throughout the state. FSORNA 2020 requires homeless registrants to report their "transient residence"[22] in-person every thirty days, §943.0435(4)(b)2., (d), Fla. Stat. (2020), in addition to the semi-annual or quarterly in-person re-registration requirement, and the requirement to report any changes to the volume of information divulged upon initial registration.

27. **Temporary residence**. FSORNA 1997 defined a "permanent" residence as a place the registrant lives for **two consecutive weeks** or more, and a "temporary" residence as a place the registrant stays for two consecutive weeks or less. § 943.0435(2), Fla. Stat. (1997). It expressly exempted from the reporting requirement a stay of two weeks or less made for the purpose of vacation, hospitalization, emergency or other special circumstance. *Id*.

28. In contrast, FSORNA 2020 defines a "permanent" residence as a place the

---

[22] The term includes places without a street address. *See* §§ 943.0435(1)(f) & 775.21(2)(o), Fla. Stat. (2020).

registrant lives for more than three days, and a "temporary" residence as a place the registrant stays for **three days or more in the aggregate** in any calendar year, including vacation, business or personal travel, in or out of state, and not excluding emergencies. §§ 943.0435(1)(f) & 775.21(2)(n), Fla. Stat. (2020).[23] Legislative staff analyses of the 2018 amendment reveal no empirical basis for

---

[23] Some states have no definition of temporary residence as applied to state residents, but require registration of short-term residences only for visitors, employees or students. Other states require reporting of temporary residences by in-state registrants, but define temporary residence far more reasonably with respect to in-state travel. By way of comparison with FSORNA, Arizona defines temporary residence as 14 consecutive days, or an aggregate of 30 days per year, A.R.S. §§ 13-3822; Arkansas as 5 or more consecutive days in a year, A.C.A. § 12-12-903(10); California as any address at which a registrant "regularly reside[s]," Cal. Penal Code § 290.002; Colorado as 14 consecutive days or 30 days a year, C.R.S. §§ 16-22-105 - 16-22.108; Connecticut, as applied to visitors, "on a recurring basis for less than five days," Conn. Gen. Stat. § 54-253; Delaware as greater than 2 weeks in a year, 11 Del. C. § 4120; Georgia, as applied to visitors, 14 consecutive days or more than 30 days in a year, O.C.G.A. § 42-1-12(e)(7); Hawaii, as applied to visitors, more than 10 days or an aggregate of 30 days in a year, H.R.S. §§ 846E-2, 846E-3; Idaho, as applied to temporary volunteers or employees, more than 10 consecutive days or 30 days in a calendar year, Idaho Code § 18-8303(6); Indiana, as applied to visitors, 7 days within 180-day period or 7 consecutive days or 14 days in the aggregate per year, I.C. § 11-8-8-12; Iowa, as applied to visitors, 5 calendar days in a year, Iowa Code § 692A.104-692A.105; Kansas as 3 consecutive days in one location or 10 days in a period of 30 consecutive days, K.S.A. § 22-4902; Kentucky, as applied to visitors, 14 consecutive days or 30 days in calendar year, K.R.S. § 17.510; Louisiana as 7 consecutive days, La. R.S. § 542.1.2(F)(1); Maine, as applied to visitors, 14 consecutive days or an aggregate of more than 30 days in a calendar year, MR.S. § 11224; Maryland as any place person visits for longer than 5 hours per visit more than 5 times within a 30-day period, Md. Code of Criminal Procedure, § 11-701(d)(2); Massachusetts as 14 or more aggregate days in a calendar year, or place routinely resided in for 4 or more consecutive or non-consecutive days per month, A.L.M. G.L. § 178C; Michigan as more than 7 days, M.C.L. § 28.722(p); Minnesota, as applied to visitors, more than 14 days, Minn. Stat. § 243.166(1b); Mississippi, as applied to visitors, 14 or more consecutive days in calendar year, Miss. Code Ann. § 45-33-27; Missouri, as applied to visitors, more than 7 days in 12-month period, R.S. Mo. § 589.400; Montana, as applied to visitors, 10 days or more or an aggregate of 30 days in calendar year, Mont. Code Ann. §§ 46-23-504, 46-23-505; Nebraska, as applied to visitors, 3 calendar days, N.S. Art. 40, §§ 29-4001.01, 4004; New Hampshire, as applied to visitors, more than 5 days during one-month period, R.S.A. § 65-B-1(XIII); New Jersey as 10 days, N.J. Stat. § 2C-7-2 New Mexico, 30 days or more in any 365-day period, as applied to out-of-state employees, more than 14 days or an aggregate of 30 days in a calendar year, N.M. Stat. Ann. §§ 29-11A-3(E), (H)(4); New York, as applied to in-state employees, more than 14 consecutive days or aggregate period exceeding 30 days in calendar year, N.Y. C.L.S. Corrections, § 168-a; North Carolina, as applied to new residents, 15 days in state, to employees, 14 days or more than 30 days in calendar year, N.C. Gen. Stat., Art. 27A, § 14-208.6; North Dakota as longer than 10 consecutive days, N.D. Century Code § 12-1-32-15(1)(I), (2); Oklahoma as 7 consecutive days or 14 days in 60-day period, 21 Okl. Stat. §§ 5581-590-.2; Pennsylvania as seven days or more, 42 Pa.C.S. § 9799.12; South Carolina as a place one "habitually resides" or resides for 30 or more days during a 12-month period, S.C. Code Ann. §§ 23-3-43-, 23-3-45-, 23-3-460; Tennessee as 14 or more aggregate days in calendar year, or 4 or more days in a month, Tenn. Code Ann. §§ 40-39-202, 40-39-203; Texas as 3 or more visits of 49 consecutive hours' duration, Tex. Code Crim. Proc. 62.051, 62.055, 62.059; Vermont as 10 or more consecutive days, 13 V.S.A., C.V.R. 28-050-002 § 3.8; Virginia, as applied to visitors, 30 days or more, Va. Code Ann. § 9.1-905; Washington, as applied to visitors, 10 days or more, Rev. Code Wash. § 9A.44.130(4)(a)(iv). https://www.google.com/search?client=safari&rls=en&q=summary+of+state+and+territorial+registration+laws+concerning+visiting+and+temporary+residence+by+adults&ie=UTF-8&oe=UTF-8.

the change, nor any consideration whether the redefinition had any impact on the risk of registrant reoffense. The analysis noted, however, that the 2018 amendment would increase the need for prison beds,[24] due in part to sheriffs' limited days and hours for processing in-person reports.[25] The implications of this definition for the registrant's ability to travel are explored next.

29. **Travel**. FSORNA 1997 did not regulate travel, except to report a new temporary or permanent residence. § 943.0435, Fla. Stat. (1997). FSORNA 2020 strictly regulates, thereby heavily burdening, intra-state, inter-state, and international travel.

30. **International Travel**. Under FSORNA 2020, the registrant must report in-person to the sheriff 21 days before leaving the country, to register all details of her itinerary, modes of travel and destinations. § 943.0435(7), Fla. Stat. (2020). She must report to the DHSMV within 48 hours of her return. § 945.0435(4)(a) Fla. Stat. (2020). She may also have to report her return to the sheriff, if "unable" to "update" this change of residence at the DHSMV, with proof to the sheriff that she had gone to the DHSMV first.[26] If she changes her mind about

---

[24] https://www.flsenate.gov/Session/Bill/2018/1301/Analyses/h1301e.JDC.PDF, pp. 1, 9.

[25] https://oppaga.fl.gov/Documents/Reports/18-08.pdf

[26] This section provides that, "within 48 hours after any change in the offender's permanent, temporary, or transient residence," he "shall report in person to the" DHSMV; but that if "unable to secure or update a driver license or an identification card" at the DHSMV, he "shall also report any change" of residence within 48 hours "to the sheriff's office in the county where the offender resides or is located and provide confirmation that he or she reported such information to the" DHSMV. § 943.0435(4)(a), Fla. Stat. (2020).

leaving, she must report her change of mind within 48 hours. Failure to register her change of mind is a second-degree felony. § 943.0435(8), Fla. Stat. (2020). If she had the intent to take this trip at the time of her last registration, she must report it then as well. § 943.0435(2)(b), Fla. Stat. (2020).

31. **Out-of-state Travel.** Under FSORNA 2020, the registrant must report in-person to the sheriff within 48 hours of leaving the state and disclose the details of her destination. § 943.0435(7), Fla. Stat. (2020). She must report to the DHSMV within 48 hours of her return, and possibly also to the sheriff, if "unable" to "update" this change of residence at the DHSMV, with proof to the sheriff that she had gone to the DHSMV first. §§ 943.0435(7), (4)(a), Fla. Stat. (2020). If she changes her mind about leaving, she must report her change of mind within 48 hours. Failure to report this change of mind is a second-degree felony. § 943.0435(8), Fla. Stat. (2020). If she had the intent to take this trip at the time of her last registration, she must report it then as well. § 943.0435(2)(b), Fla. Stat. (2020).

32. **Intra-state Travel**. FSORNA 2020 requires in-person reporting to the DHSMV "within 48 hours of any temporary residential change," and also to the sheriff, if the DHSMV does not then "update" the change, with confirmation that she already made this report to the DHSMV. § 943.0435(4)(a), Fla. Stat. (2020). Because FSORNA 2020 defines "temporary" residence to be a place the registrant

stays for three days or more in the aggregate per year, the registrant must register at one or both offices in-person within 48 hours of leaving home for a three-day weekend. If she had the intent to take this trip at the time of her last registration, she must report it then as well. §§ 943.0435(2)(b) & (14)(c), Fla. Stat. (2020).

33. **Unforeseen travel emergencies.** Unlike FSORNA 1997, FSORNA 2020 has no provisions to accommodate unforeseen emergencies in the course of travel. For example, if the registrant intends to travel in-state for two days, but her car breaks down, she is guilty of effecting an unreported change to her residence without having reported it. If she travels out-of-state for a one-day medical consultation, but is instead hospitalized for emergency surgical intervention, she is guilty of establishing a temporary residence without reporting it. If she has provided the hotel address for a temporary out-of-state residence, but the hotel is over-booked or crawling with bed bugs, she is guilty of changing her temporary residence without reporting it in person. If the sheriff's office is closed for registration when the 48-hour reporting period has elapsed, she is guilty of failing to make a timely in-person report.

34. **Ambiguity of Travel Restrictions.** "Temporary residence" in § 943.0435(1)(f) (incorporating the meaning provided in § 775.21(2)(n)) is defined as "a place where the person abides, lodges, or resides, including, but not limited to,

vacation business or personal travel destinations in or out of this state, for a period of **3 or more days in the aggregate** during any calendar year and which is not the person's permanent address …" A change to or from a temporary residence must be reported in person within 48 hours, first to DHSMV,  then, if unable to "secure or update" a driver's license, to the sheriff's office with proof of inability to "secure or update" within the same 48 hours.

35. First, the statute does not define "day" for the purpose of the 3-day reporting requirement. Is it a full 24-hour day or a specific date? If a person arrives at a hotel destination ten minutes before midnight on May 1, is May 1 the first of three days? Or does the temporary residence consist of three consecutive 24-hour intervals commencing at check-in?[27]

36. Second, the statute requires in-person reports "within 48 hours" of any change of residence. Does 48 hours mean 48 consecutive hours or 2 business days? And when does the 48-hour interval begin with respect to the third "day" of a 3-day

---

[27] Senate Bill 234 is clearly intended to resolve this ambiguity: "In calculating days for 'permanent residence,' the first day a person abides, lodges, or resides at a place is excluded. Each day following the first day is counted. A day includes any part of a calendar day." https://flsenate.gov/Session/Bill/2021/234/BillText/c1/PDF.

trip from home?[28]

37. Third, what is a "place" or "destination[ ]"? Is it a specific address or a general location? If the latter, may a registrant travel to New York City, staying no more than two days each in different rooms at the same hotel for weeks without reporting a new "temporary residence"?

38. Fourth, the statute requires in-person reporting to the DHSMV "within 48 hours of any change" in a temporary residence. § 943.0435(4)(a). Must a registrant traveling on a 6-day out of-state business trip, with 3 days in Boston and 3 in Chicago, return to Florida for in-person reporting after the 3 days in Boston and before flying to Chicago? Or does the statute require in-person reporting only after returning from Chicago, even if that means more than 48 hours after the registrant has vacated her temporary residence in Boston for a temporary residence in Chicago?

39. Fifth, the statute requires the registrant to make an in-person report within 48 hours of a change to residence first to DHSMV and then, if "unable to secure or update a driver license" there, to report in-person within the same 48-hour period to the sheriff's office with "confirmation that he or she reported such

---

[28] Most states avoid this vagueness problem by defining the reporting period in terms of business days, or increasing the number of days allowed for reporting changes, such as temporary travel. See, https://www.google.com/search?client=safari&rls=en&q=summary+of+state+and+territorial+registration+laws+concerning+visiting+and+temporary+residence+by+adults&ie=UTF-8&oe=UTF-8. This solution also avoids the impossibility problem that arises with a 48-hour reporting period, if the 48 hours elapse at a time when the sheriff's office is closed.

information to the" DSHMV first. § 943.0435(4)(a). What does it mean to "secure" or "update" a license at the DHSMV "within 48 hours of any change" in a temporary residence. Does it mean that a registrant just returning from a temporary residence must have her driver's license changed to reflect the address of the temporary residence she has just vacated?

40. Sixth, § 943.0435(7), Fla. Stat. (2020) requires that a registrant leaving the state for a temporary residence report to the sheriff "within 48 hours before the date he or she intends to leave this state to establish [temporary] residence in another state." Does that mean the registrant must report within 48 hours before she leaves, or at least 48 hours before she leaves? If it means she must report the change at least 48 hours before she leaves, does disclosure of the trip as a "known future temporary residence" at her previous re-registration, as required by § 943.0435(2)(a)2, Fla. Stat. (2020) suffice as the report required under § 943.0435(7), Fla. Stat. (2020)?

41. Seventh, § 943.0435(4)(a) requires an in-person report to the DHSMV and/or sheriff "within 48 hours of any change" in a temporary residence. Does "within 48 hours" of leaving *from* a temporary residence mean the same thing as "within 48 hours" before leaving *for* a temporary residence, as set forth in § 943.0435(7)? For example, if "within 48 hours" before leaving means no fewer than 48 hours before leaving, does "within 48 hours" after returning also mean

21

no fewer than 48 hours after returning?

42. Countless registrants over the years have asked defendant the meaning of these travel-related words and phrases, in order to avoid getting arrested for violating the travel-related restrictions. He tells them to read the statute, hire a lawyer, or ask local law enforcement. Yet defendant provides no guidance to local law enforcement agencies about the meanings of these words and phrases, allowing individual agencies to construe the terms however they see fit. Individual agencies construe them differently. This is no surprise: as shown in the chart below, derived from pretrial discovery and the defendant's pleadings in a similar pending case, *see Does v. Swearingen*, No. 18-cv-24145 (dismissed on statute of limitations grounds), defendant and high-ranking long-time employees Mary Coffee, Jeremy Gordon and Chad Hoffman **cannot agree among themselves** about the meaning of these words and phrases:

| Words and Phrases | Swearingen | Coffee | Gordon | Hoffman |
|---|---|---|---|---|
| 3 days (as used in temporary residence) | Excludes first day | Different sheriffs may interpret differently | Includes first day | Includes first day |

22

| | | | | |
|---|---|---|---|---|
| 48 hours | | 48 consecutive hours but sheriffs may interpret differently | 2 business days | 48 consecutive hours |
| Within 48 hours before | No fewer than 48 hours before | | During 48-hour interval before; could be 3-4 days before | During 48-hour interval before; could not be 3 days before |

| | | | | |
|---|---|---|---|---|
| Within 48 hours after | No fewer than 48 hours after; No more than 48 hours after | | During 48-hour interval after; but can do it before change | During 48-hour interval after |
| Secure or update driver's license | Get a new license | Not necessarily get a new license | Get a new license | No new license unless change permanent residence |
| When to get updated license | When vacate temporary residence | Discretion of DHSMV | After 3d day | On 3d day |
| When to report temporary residence | | Before leaving for, upon establishing or when vacating | No need if temporary and permanent residence in Fla.; Sheriff's discretion | Must report in-person if temporary and permanent residence in Fla.; after establishing |
| In-Person | | | Could mean by phone | Could mean by phone |
| When "day" begins | Midnight | | Upon arrival | Midnight |
| When "day" ends | Midnight | | Close of business | Midnight |
| When 48-hour interval begins | | | After 3d day | On 3d day |

43. Ambiguities like these, in the context of a strict liability third-degree felony statute with a maximum penalty of five years in prison and a minimum-mandatory penalty of six months GPS-monitored community control, deter Jane Doe from the exercise of her fundamental rights to intra-state travel, under the Florida Constitution, and to interstate travel and freedom of movement under the federal and state constitutions.

44. **From *mens rea* to strict liability.** FSORNA 1997 was silent about the state of mind required for a violation of its registration requirements, a silence construed in conformity with the common law presumption that a statute with criminal penalties attached requires proof of *mens rea*.[29] In contrast, FSORNA 2020 expressly delimits the intent requirement for any violation of the registration statute to this: if a registrant has once been arrested or arraigned for failing to register, she may never again for the rest of her life assert lack of knowledge as a defense, even if she does not know or understand a new amendment. § 943.0435(9)(d), Fla. Stat. (2020). Furthermore, there is no statutory or judicially-created exception for emergencies, impossibility, or incapacitation. Finally, defendant provides no guidance to local law enforcement agencies whether to make exceptions under these circumstances, leaving it up to local police whether to relax or enforce requirements under these circumstances, leading to arbitrary

---

[29] *Lambert v. People of California*, 355 U.S. 225, 229 (1957); *State v. Giorgetti*, 868 So. 2d 512,519 (Fla. 2004).

24

enforcement.

45. **Minimum-mandatory sentence.** FSORNA 1997 had no minimum- mandatory sentence for violations of its reporting requirements. FSORNA 2020 provides for a minimum-mandatory sentence of six months GPS-monitored community control for a first offense, one year for a second offense, and two years for a third or subsequent offense. This means that a registrant who concededly had **no knowledge or intent** to violate the statute **must** nevertheless be criminally punished for doing so. § 943.0435(9)(b), Fla. Stat. (2020).

### Public Notification: From Discreet to Aggressive

46. **Notification.** FSORNA 1997 provided for public notice through a toll-free telephone number. Any member of the public wanting to know whether an identified individual was a registrant could call that number to find out. § 943.043, Fla. Stat. (1997).

47. FSORNA 2020 expressly endorses aggressive notification to the public: Relying on the demonstrably false premise that sex offenders "often pose a high risk of engaging in sexual" reoffense, FSORNA 2020 expressly declares that registrants have a "reduced expectation of privacy" that warrants indiscriminate notification to protect the public. § 943.0435(12), Fla. Stat. As a result, law enforcement officers are authorized to post signs or distribute flyers in the registrant's community, to go door-to-door to her neighbor's' homes to warn

them of her presence, to post notices on local television channels, to run pre-feature notices in local movie theaters, to send automated email and phone warnings, even to affix a decal to a registrant's license plate.

48. In addition, FSORNA 2020 requires local law enforcement officers to "verify the addresses" of registrants. § 943.0435(6), Fla. Stat. (2020). Law enforcement does this by dispatching contingents of uniformed police officers to registrant homes to "verify" that they live there, regardless how long they have, in fact, lived there. If the registrant is not home, the police go to the homes of her neighbors, to ask whether they have seen her. Police officers engaged in such "notification" or "verification" are immune from civil liability for any damages in connection with these tasks. § 943.0435(10), Fla. Stat. (2020).

49. There is also an FDLE Internet website,[30] which lists all registrants, posting their photos, qualifying offenses, addresses and other identifying information. In many states, the public must go to such a website to learn who is registered. In contrast, FDLE chose to Google-index its registry – a choice made by few other states – so that people searching a registrant's name for any other purpose will see her status before seeing anything else. Indeed, because Google gives priority

---

[30] *See* §943.043(1), Fla. Stat. (2020) ("The department may notify the public through the Internet of any information regarding sexual predators and sexual offenders which is not confidential and exempt from public disclosure under § 119.07(1) and §24(a), Art. I of the State Constitution.").

26

to data from government websites, and because private Web "crawlers" vacuum up such data for re-publication on their websites, typing a registrant's name into any large search engine may immediately yield page after page of the FDLE website, announcing the registrant's status and crime, and disclosing her current photo and address, criminal history, vehicle and vessel identification, date of birth, race, sex, hair color, eye color, height, weight, and any identifying marks such as scars, marks, or tattoos.

50. FSORNA 2020 also requires law enforcement to notify institutions of higher education that any registrant enrolled or employed, even for online classes, is a sex offender. § 944.607, Fla. Stat. (2020). There are no restrictions on these institutions' dissemination of this information.

51. Because the registrant is now required to register her Internet identifiers, law enforcement can follow where she goes online and what she says there. Law enforcement is authorized to notify the public that an identified username was registered by a sex offender. FDLE may also notify commercial social networking websites[31] of a registrant's e-mail addresses and internet identifiers, so that those

---

[31] This means "a commercially operated Internet website that allows users to create web pages or profiles that provide information about themselves and are available publicly or to other users and that offers a mechanism for communication with other users, such as a forum, chat room, electronic mail, or instant messenger." § 943.0437(1), Fla. Stat. (2020).

websites may screen or disable her access.[32] Like her corporeal identity, her virtual identity is, under FSORNA 2020, inseparable from her sex offense.

52. Under FSORNA 2020, FDLE's aggressive notification scheme communicates to the public not only that the registrant once committed a sex crime, but also sends the message that she remains at high risk of committing another one. As discussed next, this communication is false: few registrants ever reoffend, while aggressive notification inflicts extreme economic and housing instability, and crushing social isolation, on the registrant and her family.

### Empirical Evidence

### Low risk of reoffense

53. Contrary to popular belief, convicted sex offenders have a far lower rate of recidivism than convicted felons generally. According to studies published by the United States government, an average of 5.3% of convicted sex offenders are arrested for reoffense within three years of release from prison, compared with 68% of convicted felons generally. Significantly, all convicted felons, including registrants, are at highest risk of reoffense during the first 3 years after release. But even the 5.3% reoffense rate overstates the average, because it comes from a study consisting of only adult, male, violent offenders released from prison, a higher-risk group than registrants generally, many of whom committed non-

---

[32] § 943.0437(1), (2), (3), Fla. Stat. (2020).

violent offenses, and, like Jane Doe, were not sentenced to prison. Even among

that study's subjects, the first-time offenders' rate of reoffense was only 3.3%.

The risk that female registrants like Jane Doe will sexually reoffend is

considerably lower even than that: 1.8% within five years.

54. A registrant's reoffense risk is easily ascertainable. In particular, the Static-99R,

a 10-item actuarial scale that measures individual risk, can be administered

within less than twenty minutes, and is more accurate than clinical assessments.

It is the most widely used sex offense risk assessment tool in the world,

including in Florida, which requires risk assessments to determine the right of

registrants on probation to contact visitation with minors, § 948.30(e), Fla. Stat.

(2020), and to identify "high-risk" registrants on community supervision. §

948.061, Fla. Stat. (2020). In addition, clinical evaluations and a battery of

psychological tests already in use in a variety of judicial settings in Florida can

further individualize risk determinations.

55. Whatever risk a registrant presents on release from prison, it decreases with

every year the registrant remains offense-free in the community, according to

decades-long studies of large samples from around the world, including

populations not subject to American-style registration statutes. After seventeen

years offense-free in the community, even the highest-risk offenders, who

comprise a small fraction of registrants generally, present virtually no risk of

sexual reoffense.

56. Registrants like Jane Doe are statutorily required, as a condition of probation, to undergo evaluation and intensive sex offender counseling. § 948.31, Fla. Stat. (2020). The counseling, for which the registrant must pay, *id.*, and typically lasts for years, is conducted by persons who meet rigorous statutory criteria, § 948.001, Fla. Stat. (2020), and deploy polygraph tests designed to ensure their clients are not committing unreported offenses. These measures work as intended to further reduce a registrant's already-low risk of sexual reoffense. In fact, **95% of sex crime arrests are of people who have never been convicted of a sex offense, that is, people not on the registry**.

57. FSORNA, as originally enacted or as amended over the years, does not reduce whatever risk the registrant presents. A study conducted in Florida, comparing sexual reoffense rates in the eight years before and the eight years after FSORNA's original passage, found no statistically significant difference in those rates. These results are consistent with studies conducted in other states. These results are unsurprising: most registrants are highly unlikely to sexually reoffend, and those that do account for only a tiny percentage of sex crimes generally. In fact, empirical studies establish that aggressive notification, such as that authorized by FSORNA, can increase the risk of reoffense by creating barriers to community reintegration, employment and housing.

**Punitive Impacts**

58. Aggressive notification falsely stigmatizes registrants as inherently dangerous persons, leading to mass revulsion towards and rejection of them, with devastating housing, economic, civic and psychosocial effects on registrants and their families. Registrants and their partners have trouble finding and keeping jobs. Landlords, condominium and housing associations do not want them as neighbors. They and their families are shamed, shunned, bullied, and ostracized. They are victimized by scammers pretending to be law enforcement officers who threaten and extort them. Their children are not invited to play dates and birthday parties; their teachers and classmates treat them with hostility; they cannot forge social ties. Worse yet, aggressive notification has led to numerous incidents of violence in Florida: vigilantes damage and deface registrants' property, threaten, attack, torture, even murder them.[33] Registrants and their families, including school-age children, suffer disproportionately high rates of depression and suicidality as a result of these impacts, impeding the registrant's efforts at rehabilitation, thereby subverting FSORNA's stated purpose.

59. A recent example of FSORNA's indiscriminately punitive impact is Amendment 4, on the state-wide ballot in November 2018. The amendment,

---

[33] *See e.g.*, https://twitter.com/hashtag/killyourlocalpedophile?src=hash, a social media account that sells clothing and paraphernalia bearing this hashtag and other slogans intended to incite violence against registrants.

which passed, proposed to restore voting rights to all convicted felons except murderers and sex offenders. As a practical matter, virtually all persons convicted of murder in Florida are in prison for life. So barring murderers from the polls is an empty gesture.

60. In contrast, many registrants, like Jane Doe, were sentenced to probation, because the prosecutor and sentencing judge reasonably determined that this was a proportionate penalty for her offense, and protected the public in light of her individual propensity to reoffend. There is no public safety interest in barring registrants from the polls, because children do not vote, and are unlikely to be present at polling locations unattended by an adult parent or legal guardian. The proposed amendment instead reflects the boundless animus inspired by FSORNA's false message that registrants are inherently dangerous persons to be quarantined from the herd.

**Burdens of Registration Statute on Plaintiff**

61. Ms. Doe pled guilty on February 6, 2017 to having consensual sexual relations when she was 24 with someone under 18 in exchange for a sentence of 7 years' probation, which was terminated early. She successfully completed sex offender treatment while on probation. Ms. Doe is herself the victim of sexual abuse through childhood, suffered from depression throughout childhood, and was hospitalized for suicide attempts. She married at 14 after getting pregnant but

lost her baby 8 weeks later. At 17, she gave birth to a daughter. At 21, she divorced her abusive alcoholic husband. She presently resides with her daughter, now 12 years old, her second husband, whom she married in 2014, and their 3-year-old twins.

62. At the time of her qualifying offense, she was separated from her second husband, deeply depressed, and drinking to excess while taking prescribed psychotropic medication. After the offense, she and her husband reconciled. She is currently sober and in treatment for anxiety and depression. She has also been treated for thyroid disease and cervical cancer.

63. Notwithstanding severe childhood sexual abuse, depression and suicidality, marriage at 14 and childbirth at 17, Ms. Doe graduated high school, obtained an associate degree in law enforcement, became certified as a guard with the Department of Corrections, and got licensed as a CNA. She lost her certification and license due to her conviction. Her status as a sex offender has produced adverse impacts far more severe than conviction alone.

64. Due to her status as a sex offender, she is required to re-register in-person twice a year at the sheriff's office. The sheriff's office in her county is open for in-person reporting only 2 days a week, with appointments available for 3 other days, only when someone is available to take in-person reports. Occasionally she has had to return the following day when the employee assigned to

registration is busy. She has thus far had to make in-person reports 3 times in connection with 3 different vehicles. She will have to make in-person reports when she colors her hair, gains weight, loses weight, gets a fresh scar, or if she or her husband borrow or rent a car for 5 days. She has to miss work and lose wages to comply with the in-person reporting requirements. Because she is forced to miss work and wages when she makes in-person reports to the sheriff, and because she would have to make one or more in-person reports of a temporary residence, Ms. Doe is chilled from exercising her fundamental rights to freedom of movement and travel.

65. Furthermore, Ms. Doe does not understand some of the terms used in FSORNA 2020's restrictions. She does not know whether 48 hours means 48 consecutive hours or 2 business days. She does not know the meaning of "day" for the purpose of the 2018 requirement to make an in-person report for as few as 3 days away from home, or when the 48-hour reporting requirement begins with respect to the third day from home. She does not know what it means to "secure" or "update" her license in connection with a "temporary residence." Because her sheriff's office keeps such limited days and hours for taking in person reports, it is a virtual certainty that, if 48 hours means 48 consecutive hours rather than 2 business days, she will frequently find it impossible to comply with the in-person reporting deadlines. A mistake about meaning, even if unwitting, or a

34

belated report, even if unavoidable, could result in arrest and conviction for a third degree felony with a minimum-mandatory sentence.   As a result, she is chilled from exercising her fundamental rights to freedom of movement and travel.

66. Due to her status, Ms. Doe has lost opportunities for managerial training, promotion and wage increases. Three job applications were rejected due to her status. Although she is a very hard worker with real initiative who needs to support her family, her status has consigned her to menial low-wage work like the job she has now, 40+ hours a week at $8.56 an hour packing worms at a fishbait warehouse.

67. Ms. Doe has also been subjected to verbal abuse about her status and threats to beat her up and bomb her car. Right after the threat to her car, its tire was slashed. She has been harassed at her workplace while pregnant with her twins. This kind of harassment has occurred approximately four to five times a year for the past four years. She lives in fear of violent vigilantism against her and her family as the result of her status.

68. Another adverse impact of her status has been her virtual banishment from her children's educational and recreational activities: when the State treats registrants like hazardous waste to be strictly contained, so does everyone else. When her 12-year-old daughter was in elementary school, Ms. Doe was not

allowed on campus for parent-teacher conferences or sporting events. When Ms. Doe went to pick her daughter up, a school resource officer was assigned to monitor her until her daughter arrived at the front office. Her daughter is now in high school, staying late most days for sports, homework, or other activities. Ms. Doe is not allowed to pick her daughter up from after-school programs and is forced to pay someone else $20.00/day to bring her daughter home. Ms. Doe is prohibited from being present when her daughter participates in team sports, pep rallies and pageants. Her daughter is already in therapy for depression, and sad about her mother's exclusion from her school and after-school activities. Ms. Doe will be similarly excluded from the school and after-school activities of her 3-year-old twins once they start kindergarten. This exclusion is not only hard on Ms. Doe. It injures her children at the time in their lives when they need her the most. Because her county's population is very small, and notification is aggressive, it is only a matter of time before her children are known for her status, resulting in ostracism, bullying, shunning, depression and suicidality, the fate of many registrants' children.

## CLAIM I – Ex Post Facto

69. Plaintiff alleges that the 2020 amendments – redefining temporary residence from 5 days to 3 days in the aggregate per year and imposing a minimum-mandatory sentence for failure to register offenses – are penal in effect if not

36

intent, violating the federal guarantee against ex post facto laws, under the multi-factor intent-effects test set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) and applied in *Smith v. Doe*, 538 U.S. 84 (2003). Here are the factors:

70. **Penal effects historically regarded as punishment**. Having to make at least one and as many as four in-person reports for as little as a long weekend away from home resembles probation, during which a probationer must inform her probation officer of plans to leave home.   The application of a minimum-mandatory community control sentence to a failure to register offense is significantly more severe than probation. Technical probation requirements resemble FSORNA 2020 requirements in demanding compliance with dozens of affirmative obligations regardless of whether the conduct itself is harmful. But a probationer cannot be punished unless the state has established that the violation was willful and substantial. In contrast, FSORNA violations need not be willful or substantial: being even an hour late to make an in-person report now subjects registrants to a minimum-mandatory criminal sentence, regardless of why they were late.

71. **Affirmative disability or restraint.** In contrast with ASORA's requirement of one in-person registration event followed by mailed-in annual updates, FSORNA 2020 requires Plaintiff to report in person to the Sheriff's Office and

Department of Highway Safety and Motor Vehicles (DHSMV) multiple times for as few as 3 days away from home. By comparison, a probationer need only call her probation officer before taking a comparable weekend trip.

72. **Promotes the purpose of punishment**. Although studies show no deterrent impact, FSORNA 2020 was enacted with the express **intent** to deter reoffense, based solely on a past crime, without regard to present risk, and imposes burdens that outpace its stated intent. In particular, the 2018 amendment requiring one or more in-person reports for as few as 3 days away from home and imposing a minimum mandatory sentence for even inadvertent and unknowing offenses, in the absence of any empirical evidence that the amendment reduces the risk of sexual reoffense or otherwise protects the public, gives rise to "serious argument that the ulterior purpose is to revisit past crimes, not prevent future ones." *Smith*, 538 U.S. at 109, Souter, J., *concurring in judgment*.

73. **No rational connection to non-punitive purpose**. The absence of a rational connection to a non-punitive purpose is a "most significant" factor. *Smith*, 538 U.S. at 102-03. Significantly, the legislature advanced no purpose at all for redefining temporary residence from 5 days to 3 in the aggregate per year. It relied on no data or studies in redefining temporary residence. Indeed, the only

articulated impact of the amendment is to increase the number of prison beds.[34]
There is no empirical evidence, nor conceivable basis to believe that redefining
temporary residence from 5 days to 3 does anything to reduce sexual reoffense
or to otherwise protect the public from sexual harm. There is no empirical
evidence, nor conceivable basis to believe that imposing a minimum-mandatory
sentence for trivial or inadvertent violations of the statute does anything to
reduce sexual reoffense or otherwise to protect the public from sexual harm.
That is because there is no empirical basis to believe that people who violate the
registration statute are more likely to reoffend sexually than people who do not
violate the statute. Therefore, the imposition of a minimum-mandatory sentence
for failure to register offenses does not deter sexual reoffense but serves only to
increase Jane Doe's peril in the event she inadvertently, unknowingly or
involuntarily violates the statute.

74. **Excessive in relation to non-penal purpose**. Assuming *arguendo* some
conceivably rational connection to a non-penal purpose, the 2018 amendment is
grossly excessive in relation to it. Imposing formidable reporting burdens on
short-term travel coupled with a minimum-mandatory sentence for even
inadvertent or unavoidable violation of dozens of affirmative obligations, in the
absence of any empirical basis or individualized determination of risk, is excessive with
respect to whatever its objectives may be.

---

[34] https://www.flsenate.gov/Session/Bill/2018/1301/Analyses/h1301e.JDC.PDF, pp. 1, 9.

**75.** The severe penal effects of the 2018 amendment render it a punishment under the ex post facto clauses of the state and federal constitutions. Striking this amendment, on its face and/or as applied to Jane Doe would ameliorate the harm.

**CLAIM II – 14TH AMENDMENT: Procedural Due Process**

**Claim II(A) – Strict Liability for Registration Violation**

76. Jane Doe repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

77. Principles of procedural due process limit strict liability offenses to those where (1) the penalty available is slight; (2) the statute regulates inherently dangerous or potentially harmful conduct; and (3) a conviction does not result in a substantial stigma. FSORNA meets none of these requirements.

78. FSORNA 2020 is virtually strict liability: it allows of only one defense, lack of notice, and that for only a first failure to register, not for unknowing, inadvertent, or unavoidable failures to timely report in the future. In *State v. Giorgetti*, 868 So. 2d 512, 518-21 (Fla. 2004), the Florida Supreme Court recognized that the statute's silence about *mens rea* would violate due process as applied to a defendant who lacked notice of affirmative obligations with respect to inherently harmless conduct. Accordingly, the Florida Supreme Court implied a lack of notice defense to save the statute. Within months after *Giorgetti* issued,

40

the legislature amended the statute to include a notice requirement, but tightly circumscribed the defense by restricting it to registrants who had *never* received notice of the requirement to register. A failure to know or understand any subsequent amendment to the requirements is not a defense. Since *Giorgetti*, no court has applied any other defenses to violating the statute. Nor has defendant provided any guidance to local law enforcement agencies about a *mens rea* requirement for failure to report offenses. Instead, he leaves it up to local police to decide whether to arrest someone who inadvertently or unavoidably violates the statute.

79. The penalties provided for even inadvertent violations like those are not slight: a minimum of six months' GPS-monitored community control, a maximum of five years in prison. The conduct regulated through registration is not inherently dangerous: it includes traveling for a long weekend without making one or more in-person reports, or making an in-person report an hour late, or having non-registered cars parked outside one's home for 5 days, or carrying a non-branded driver's license, or failing to timely report a fresh scar.

80. Because FSORNA 2020 imposes mandatory criminal punishment for even unwitting or inadvertent failure to meet multiple affirmative obligations concerning innocent harmless conduct, it violates procedural due process, on its face and/or as applied to Jane Doe. This Court's determination of this issue in

41

favor of Jane Doe would ameliorate this constitutional injury.

## Claim II (B) – Vagueness: Travel Restrictions

81. Plaintiff Jane Doe repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

82. A law so vague that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement violates the procedural due process clause. FSORNA 2020 laws requiring in-person reporting to the sheriff or DHSMV within 48 hours of trivial events, including brief stays from home, are vague in violation of the due process clause. Jane Doe does not understand the meaning of the words and phrases identified in ¶¶ 38 - 47. Defendant and his employees cannot agree about what they mean. Defendant allows local law enforcement officers to interpret these words and phrases however they see fit, leading to arbitrary enforcement. Pre-enforcement review of a vague criminal law is appropriate where the vagueness chills constitutionally protected conduct, such as freedom of movement or of interstate and intrastate travel. In particular, when vagueness permeates the text of a criminal law that 1) contains no *mens rea* requirement and 2) infringes on constitutionally protected rights, pre-enforcement review of a facial vagueness challenge is necessary.

83. As set forth in ¶¶ 38-47, FSORNA's provisions restricting travel are hopelessly vague and ambiguous, but are enforced with strict liability and mandatory

42

criminal sanctions, chilling Jane Doe from exercising her fundamental rights to interstate and intrastate travel, and to freedom of movement. Striking these provisions now on their face and/or as applied to Jane Doe, who poses no risk of reoffense would immediately ameliorate this constitutional harm.

## CLAIM III – 14th AMENDMENT: Substantive Due Process

## Claim III(A) – Right to Travel/Freedom of Movement under Federal and State Constitutions

84. Plaintiff repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

85. Plaintiff has a fundamental federal right to interstate travel[35] and freedom of movement[36], and a fundamental state right to intrastate travel[37] and freedom of movement.[38] This right is abridged by the requirement to report in- person to one or two different offices within 48 hours of leaving and/or returning from as few as three days away in the aggregate per year.

86. Before burdening a fundamental liberty interest, the government must show that the burden is necessary to achieve a compelling public purpose. The government cannot meet this burden here. With respect to the 2018 amendment, defendant

---

[35] *United States v. Guest*, 383 U.S. 745, 758 (1966); *Saenz v. Roe,* 526 U.S. 489, 498 (1999); *Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969).

[36] *Papachristou v. City of Jacksonville,* 405 U.S. 156 (1972); *Aptheker v. Sec'y of State*, 378 U.S. 500, 520 (1964); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Kolender v. Lawson*, 461 U.S. at 358.

[37] *State v. J.P.*, 907 So. 2d 1101, 1113 (Fla. 2004); *T.M. v. State,* 784 So. 2d 442, 444 (Fla. 2001).

[38] *Powell v. Holt*, 850 So. 2d 474, 480 (Fla. 2003).

43

has no articulable, empirically-supported or even conceivable reason to believe that changing the definition of "temporary residence" from 5 days to 3 days with a minimum-mandatory penalty reduces a registrant's risk of sexual reoffense or protects the public in any way. While the government's interest in protecting the public from sexual harm is compelling, this measure does not advance that interest. On the other hand, redefining temporary residence from 5 days to 3, and imposing a minimum mandatory sentence for even inadvertent or unavoidable failures to make one or more in-person reports within 48 hours of a long weekend from home constitutes a staggering burden on plaintiff's fundamental rights, chilling her from exercising them. Striking these restrictions, on their face and/or as applied to Jane Doe, will ameliorate this harm.

87. Jane Doe also challenges pre-2018 restrictions on travel: the requirement to make one or more in-person reports, the chilling vagueness of the words and phrases contained in the travel-related provisions, and felony liability for even inadvertent or unavoidable delays in making these multiple in-person reports. Her sheriff's office keeps limited days and hours for in-person reporting.  As a result, it may often be impossible for her to travel without violating the statute. Each report costs her time from work and wages. These restrictions unreasonably burden and chill her in exercising fundamental rights. She poses a

trivial risk of reoffense, a risk that declines with each year at liberty in the community. Defendant has no empirical basis to believe that requiring her to make multiple in-person reports about travel from home reduces her risk of sexual reoffense or protects the public in any way. Without an individualized determination of risk, defendant has no legitimate, let alone compelling reason to burden her fundamental rights to travel and freedom of movement, especially as applied to someone whose young family will bear the burden as well. Striking these requirements, on their face and/or as applied to Jane Doe, will ameliorate this harm.

### Claim IV(B) – Stigma-Plus

88. Jane Doe repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

89. The substantive due process clause protects individuals from governmental actions that are arbitrary and unreasonable in impairing individual liberty. FSORNA inflicts stigma-plus, a fundamental liberty interest that the government may not impair unless necessary to serve a compelling government objective. A stigma is "[a] mark or token of infamy, disgrace, or reproach."[39] To rise to stigma-plus, it must be coupled with "more tangible interests such as employment," or

---

[39] *State v. Robinson*, 873 So. 2d 1205, 1213 n.7 (Fla. 2004), quoting *American Heritage Dictionary of the English Language* 1702 (4th ed. 2000).

altered legal status.[40] FSORNA meets that test. It stigmatizes registrants through aggressive notification, impairing their economic and housing opportunities, as well as the safety and security of their families. And it alters their legal status by subjecting them to a lifetime of mandatory punishments for a plethora of unwitting missteps.

**90.** Due to the stigma of the label ''sex offender'' and as a result of aggressive notification of her status, Jane Doe has been victimized by harassment and threats 4 to 5 times a year, even in her workplace. She is aware of violent vigilantism against registrants in Florida, and fears for herself and her family. She knows that eventually her children will by stigmatized by her status, and will suffer the impacts – ostracism, hostility, exclusion leading to depression and suicidality – common among registrants' children.

91. Anchored in demonstrably false assumptions about recidivism and demonstrably failing in its stated purpose to protect the public, FSORNA cannot survive heightened scrutiny, on its face and/or as applied to Jane Doe, who demonstrably represents virtually no risk of reoffense, in violation of her rights to substantive due process. Striking these requirements, on their face and/or as applied to Jane Doe, will ameliorate this harm.

### Claim III (C) – No Rational Relationship as Applied to Jane Doe

---

[40] *State v. Robinson*, 873 So. 2d at 1213, n.74, citing *Paul v. Davis*, 24 U.S. 693, 701, 708-09 (1976).

92. Jane Doe repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

93. In the absence of a fundamental liberty interest, substantive due process requires that a statute bear a rational relationship to a permissible legislative objective, that it not be arbitrary, capricious or oppressive. FSORNA fails to satisfy even this indulgent standard of scrutiny, because it is anchored in false assumptions about risk, and its means fail to mitigate whatever risk there is. Indeed, empirical evidence establishes that the considerable burdens of FSORNA, in particular its aggressive notification, tend to increase rather than decrease the risk of sexual reoffense.

94. Even if the assumptions about categorical and intractable risk were reasonable, which they are not, they are unreasonable as applied to Jane Doe, who poses a trivial risk of reoffense and is suffering under the severe constraints of the statute. In the absence of an individualized risk assessment, burdening her with FSORNA's increasingly oppressive affirmative obligations is cruelly irrational.

Accordingly, there is no rational relationship between FSORNA's goals and its means, on its face and/or as applied to Jane Doe, in violation of her rights to substantive due process. Striking these requirements, on their face and/or as applied to Jane Doe, will ameliorate this harm.

## Claim III (D) – Irrebuttable Presumption

95. Jane Doe repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

96. FSORNA does not require or even permit individualized assessments to determine a registrant's risk of reoffense before requiring registration. Nor does it offer registrants like Jane Doe an opportunity to present evidence that her risk of sexual reoffense, consistent with scientific consensus, was extremely low when she re-entered the community and will diminish in every year thereafter. Instead, FSORNA irrebuttably presumes that those who commit qualifying offenses present a high risk of reoffense for the rest of their lives regardless of how easily their real risk of reoffense may be ascertained.

97. The constitutionality of an irrebuttable presumption turns on the "adequacy of the 'fit' between the classification and the policy that the classification serves," whereas here the classification and policy infringe on fundamental rights. *See Michael H. v. Gerald D.*, 491 U.S. 110, 121 (1989). The rationale for FSORNA's irrebuttable presumption, that sex offenders reoffend at very high rates for the rest of their lives – is rebutted by the empirical evidence, especially as applied to Jane Doe, whose actuarial risk of sexual reoffense is 1.8% after 5 years, and whose actual risk is further reduced by various pro-social factors. Moreover, the presumption as applied to any individual registrant, including Jane Doe, can be readily rebutted by risk assessment instruments and clinical evaluation and

testing used in Florida in many other contexts to determine an individual's risk of sexual reoffense. The state can have no legitimate interest in applying an erroneous and disabling yet irrebuttable presumption to registrants like Jane Doe, who demonstrably pose no threat to the public. There is, at best, an inadequate "fit" between the classification and the public interest it purports to serve, violating the substantive due process clause as applied to Jane Doe. Striking FSORNA on its face and/or as applied to her would redress this constitutional harm.

### CLAIM V – State Constitutional Right to Privacy

98. Jane Doe repeats and realleges all preceding paragraphs before the Claims for Relief Section, as if fully set forth herein.

99. Art. I, § 23, Fla. Const. expressly provides for a right to privacy, which includes disclosural privacy: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life." Aggressive public dissemination through the Florida registry and community notification procedures, of a registrant's name, home address, photograph, identifying marks, place of employment, contact information, vehicles owned or parked outside her home, etc. – information to which she has a reasonable expectation of privacy – infringes on her state constitutional right to disclosural privacy. Indiscriminate and public disclosure of this information has subjected her to harassment,

ostracism, shaming, shunning, and threats of harm to her person and her property. Before the government can infringe on rights protected under Art. I, § 23, it must present a compelling justification and an absence of less restrictive means for doing so. Because Jane Doe demonstrably represents virtually no risk of sexual reoffense and the public disclosure of her private information does not reduce whatever risk there is, FSORNA's public notification provisions violate Art. I, § 23, on its face and as applied to Jane Doe. Furthermore, because the state right to privacy is enumerated, it is fundamental. Because the government cannot meet its burden to present a compelling justification for infringing upon this fundamental right, aggressive public notification also violates substantive due process, pursuant to Art I, § 9, Fla. Const., on its face and as applied to Jane Doe. *See Doe v. State of Alaska, Department of Public Safety*, 444 P.3d 116 (Alaska 2019) (registration statute violated state's enumerated privacy provision under strict substantive due process analysis based in part on increasing harassment and violence against registrants). Striking these requirements, on their face and/or as applied to Jane Doe, will ameliorate this harm.

## **REQUEST FOR RELIEF**

WHEREFORE, Jane Doe respectfully requests that the Court:

Declare Fla. Stat. § 943.0435, Fla. Stat. (2020) unconstitutional, facially and/or as applied to Jane Doe.

Permanently restrain and enjoin the Defendant, including all of Defendant's officers, agents, servants, employees, attorneys and other persons in active concert or participation with Defendant, from enforcing Fla. Stat. § 943.0435 against Jane Doe.

Award Plaintiff her attorneys' fees and expenses in this action pursuant to 42 U.S.C. § 1988(b).

Award Plaintiff her costs of suit.

Grant such other and further relief as this Court deems just and proper in the circumstances.

Respectfully submitted,

s/*Valerie Jonas*

Valerie Jonas, Esq.
Florida Bar No. 616079
valeriejonas77@gmail.com
WEITZNER AND JONAS, P.A.
40 NW 3rd Street, Suite 200
Miami, FL 33128
Phone (786) 254-7930
**Attorney for Plaintiffs**


s/*Todd G. Scher*

Todd G. Scher
Fla. Bar No. 0899641
tscher@msn.com
Law Office of Todd G. Scher, P.L.
1722 Sheridan Street #346
Hollywood, FL 33020

Tel:  754-263-2349
Fax: 754-263-4147
***Attorney for Plaintiffs***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, February 4, 2021, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notification for this case, including all opposing counsel.

By:  *Valerie Jonas*
VALERIE JONAS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| _____ )<br>**JANE DOE,** )<br> )<br>    _Plaintiff,_ )<br> )<br>v. )<br> )<br> )<br>**RICHARD L. SWEARINGEN,** )<br> )<br>    _Defendant._ )<br>_____ ) | **Civil Case No.** |

## <u>DECLARATION OF JANE DOE</u>

My name is Jane Doe. I have reviewed the Verified Complaint set forth in the above matter and I find that the facts contained therein which pertain to me to be true and accurate to the best of my knowledge and belief.

I understand that a false statement in this declaration will subject me to penalties for perjury.

By: <u>/s/ Jane Doe</u>

Dated: February 4, 2021

# **Appendix**

# Timeline of Amendments to Florida Statute 943.0435

**1997:**  Florida Statute 943.0435 enacted

**943.0435  Sex offenders required to report to the department; penalty.--**

## [Qualifying Offenses]

**(1)**  As used in this section, the term:
> **(a)**  "Sex offender" means a person who has been:
>> **1.**  Convicted of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or analogous offenses in another jurisdiction: s. 787.025, chapter 794, s. 796.03, s. 800.04, s. 827.071, s. 847.0133, s. 847.0135, s. 847.0145, or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this subparagraph.
>> **2.**  Released on or after October 1, 1997, from the sanction imposed for any conviction of an offense described in subparagraph 1. For purposes of subparagraph 1., a sanction imposed in this state or in any other jurisdiction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility.

## [Definitions]

> **(b)**  "Convicted" means the person has been determined guilty as a result of a plea or a trial, regardless of whether adjudication is withheld.

## [Reporting Requirements, Personal Identification Information, Definitions]

**(2)**  A sex offender shall initially report in person at an office of the department, or at the sheriff's office in the county in which the offender permanently or temporarily resides, within 48 hours after establishing permanent or temporary residence in this state. A sex offender permanently resides in this state if the offender abides, lodges, or resides in a place for more than 2 consecutive weeks. A sex offender temporarily resides in this state if the offender abides, lodges, or resides in a place for 2 consecutive weeks or less, excluding a stay of 2 consecutive weeks or less at a different residence due to a vacation or an emergency or special circumstance that requires the sex offender to leave his or her place of permanent or temporary residence for 2 weeks or less. The sex offender shall provide his or her name, date of birth, race, sex, height, weight, hair and eye color, tattoos or other identifying marks, address of permanent or legal

residence, or address of any current temporary residence, date and place of each conviction, and a brief description of the crime or crimes committed by the offender. If a sex offender reports at the sheriff's office, the sheriff shall take a photograph and a set of fingerprints of the offender and forward the photographs and fingerprints to the department, along with the information provided by the sex offender.

## [Reporting Requirements]

**(3)**  Subsequent to the initial report required under subsection (2), a sex offender shall report in person at a driver's license office of the Department of Highway Safety and Motor Vehicles within 48 hours after any change in the offender's permanent or temporary residence. At the driver's license office the sex offender shall:

> **(a)**  If otherwise qualified, secure a Florida driver's license, renew a Florida driver's license, or secure an identification card. The sex offender shall identify himself or herself as a sex offender who is required to comply with this section. The sex offender shall provide any of the information specified in subsection (2), if requested. The sex offender shall submit to the taking of a photograph for use in issuing a driver's license, renewed license, or identification card, and for use by the department in maintaining current records of sex offenders.
>
> **(b)**  Pay the costs assessed by the Department of Highway Safety and Motor Vehicles for issuing or renewing a driver's license or identification card as required by this section.
>
> **(c)**  Provide, upon request, any additional information necessary to confirm the identity of the sex offender, including a set of fingerprints.

## [Reporting Requirements]

**(4)**  Each time a sex offender's driver's license or identification card is subject to renewal, the offender shall report in person to a driver's license office, regardless of whether the offender's residence has changed, and shall be subject to the requirements specified in subsection (3). The Department of Highway Safety and Motor Vehicles shall forward to the department all photographs and information provided by sex offenders. Notwithstanding the restrictions set forth in s. 322.142, the Department of Highway Safety and Motor Vehicles is authorized to release a reproduction of a color-photograph or digital-image license to the Department of Law Enforcement for purposes of public notification of sexual offenders as provided in ss. 943.043, 943.0435, and 944.606.

**(5)**  This section does not apply to a sex offender who is also a sexual predator, as defined in s. 775.21. A sexual predator must register as required under s. 775.21.

## [Penalty for Failure to Comply]

**(6)**  A sex offender who does not comply with the requirements of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**[Immunity]**

**(7)**  The department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, and the personnel of those departments are immune from civil liability for damages for good faith compliance with the requirements of this section, and shall be presumed to have acted in good faith in compiling, recording, and reporting information. The presumption of good faith is not overcome if a technical or clerical error is made by the department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, or the personnel of those departments in compiling or providing information, or if information is incomplete or incorrect because a sex offender fails to report or falsely reports his or her current place of permanent or temporary residence.

History.--s. 8, ch. 97-299.

## 1998:

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435(1)(a): Added s.787.01 (Kidnapping) or s.787.02 (False Imprisonment), where the victim is a minor and the defendant is not the victim's parent; 825.1025 (Lewd or lascivious offenses committed upon or in the presence of an elderly person or disabled person).

-Fla. Stat. 943.0435 (1)(b) : Expanded definition of "convicted" to include "entry of a plea of guilty or nolo contendere" and to encompass convictions of similar offenses in US Armed Forces and in any state of the United States.

### Definitions Added

-Fla. Stat. 943.0435 (1)(c): Permanent and temporary residence as in 775.21

-Added Fla. Stat. 775.21(f) "Permanent residence" means a place where the person abides, lodges, or resides for 14 or more consecutive days.

-Added Fla. Stat. 775.21 (g) "Temporary residence" means a place where the person abides, lodges, or resides for a period of 14 or more days in the aggregate during any calendar year and which is not the person's permanent address; for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled as a student for any period of time in this state; or a place where

the person routinely abides, lodges, or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not the person's permanent residence.

## Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2):  Social security number, occupation and place of employment, rural route address and a post office box, post office box cannot be used in lieu of physical residential address, written notice of vehicle identification number, license tag number, registration number, a description including color scheme, hull identification number, manufacturer's serial number, name of vessel, registration number and description including color scheme.

## Added Reporting Requirements

-Fla. Stat. 943.0435 (3): After initial report to sheriff's office required under subsection (2), registrant must report in person within 48 hours to the license office of the Department of Highway Safety Motor Vehicles ("DHSMV").

-Fla. Stat. 943.0435 (3)(a): Added that registrant shall provide proof to the DHSMV that the registrant initially reported in person to the sheriff's office as required in Paragraph (2).

-Fla. Stat. 943.0435 (4):  Registrant must report in person to a driver's license office within 48 hours after any change in registrant's permanent or temporary residence.

-Fla. Stat. 943.0435 (6): The department ("FDLE") shall verify the addresses of registrants.

-Added Fla. Stat. 943.0435 (7): A registrant who intends to move out of Florida shall notify county sheriff or department within 48 hours before registrant intends to leave.

-Added Fla. Stat. 943.0435 (8): If registrant changes mind about leaving Florida, then must notify the prior agency to whom the registrant reported to within 48 hours after the registrant would have left Florida.  Failure to comply is a second-degree felony.

-Added Fla. Stat. 943.0435 (10): Added paragraph granting immunity from civil liability.

## Public Notification Expanded via Inter-related Statutes

-Fla. Stat. 943.043: Toll-free telephone number; Internet notification; sexual predator and sexual offender information.--

(1)  The department may notify the public through the Internet of any information regarding sexual predators and sexual offenders which is not confidential and exempt from public disclosure under s. 119.07(1) and s. 24(a), Art. I of the State Constitution.

-Fla. Stat. 944.606 (d): "Upon receiving information regarding a sexual offender from the [D]epartment [of Corrections], the Department of Law Enforcement, the sheriff or the chief of police shall provide the information described in subparagraph (a)1. to any individual who requests such information and may release the information to the public in any manner deemed appropriate, unless the information so received is confidential or exempt from s.119.07(1) and s. 24(a), Art. I of the State Constitution."

## Lifetime Registration Requirement and Removal Petition Added

-Added Fla. Stat. 943.0435 (11): A registrant must maintain registration with the department for the duration of his or her life, unless the registrant has had his or her civil rights restored or has received a full pardon or has had a conviction set aside in a post-conviction proceeding for any felony sex offense that meets the criteria for classifying the person as a sexual offender for purposes of registration. However, a registrant who has been lawfully released for at least 20 years and has not been arrested for any felony or misdemeanor offense since release may petition for the purpose of removing the requirement for registration as a sexual offender.

## 2000:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2): Reporting any residence within Florida or out of state.

### Added Reporting Requirements

-Fla. Stat. 943.0435 (4): Registrant must report in person to a driver's license office within 48 hours after any change in registrant's name by reason of marriage or other legal process.

### Public Notification Expanded

-Fla. Stat. 943.0435 (6): County and local law enforcement agencies shall verify the addresses of sexual offenders in a manner that is consistent with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to such verification or required to be met as a condition for the receipt of federal funds by the state.

## Immunity Expanded

-Fla. Stat. 943.0435 (10) Added to the list of those granted civil immunity: any law enforcement agency in this state and elected or appointed official, public employee, and school administrator.

## Lifetime Registration Requirement and Removal Petition Added

-Fla. Stat. 943.0435 (11)(b): A registrant may petition for removal if he or she was 18 years of age or under at the time the offense was committed, adjudication was withheld, who has had 10 years elapse since having been placed on probation, and has not been arrested for any felony or misdemeanor offense since release.

## 2002:

### Expanded Qualifying Offenses and Persons Subject to Registration

-Fla. Stat. 943.0435 (1)(a)1: s. 847.0137 (Transmission of pornography by electronic device or equipment prohibited); s. 847.0138 (Transmission of material harmful to minors by electronic device or equipment prohibited).

-Fla. Stat. 943.0435 (1)(a)3: Persons subject to registration in another state or jurisdiction but not designated as a registrant in Florida.

-Fla. Stat. 943.0435 (1)(a)4: Anyone who is in the custody, control or supervision of any other state or jurisdiction for convictions of the offenses listed in subsection (1)(a)1.

### Definitions Added

-Fla. Stat. 943.0435 (1)(d): "'Institution of higher education' means a community college, college, state university, or independent postsecondary institution."

-Fla. Stat. 943.0435 (1)(e): "'Change in enrollment or employment status' means the commencement or termination of enrollment or employment or a change in location of enrollment or employment."

### Personal Identification Information and Reporting Requirements Expanded

-Added Fla. Stat. 943.0435 (2)(b)2: Requiring reporting in person within 48 hours after any change in enrollment or employment status, and that the registrant shall report the name, department, address, county, campus, and the registrant's enrollment or

employment status for any vocation at an institution of higher education in this state.  The sheriff shall promptly notify each institution of the registrant's presence and any change in the registrant's enrollment or employment status.

## Expanded Lifetime Registration Requirement and Restrictions on Removal Petition by Juvenile Registrants

-Fla. Stat. 943.0435 (11)(b): Restricting ability to petition for removal by registrants who were minors upon conviction unless victim is 12 years of age or older.

-Added Fla. Stat. 943.0435 (11)(c): Persons subject to registration in another state, but not designated in Florida, who establish a residence (even temporary) in Florida must remain on Florida's registry for life. To be removed from the registry, the person must establish not only that his out-of-state designation has been legally removed by the other state, but that h/she no longer meets the criteria for registration as a sex offender under Florida law.

## Legislative Intent Added

-Fla. Stat. 943.0435 (12): Florida legislature finds registrants pose a high risk of recidivism and that registrants have a reduced expectation of privacy because of public interest of public safety, and releasing information on registrants to law enforcement agencies and to public upon request.  "The designation of a person as a sexual offender is not a sentence or a punishment but is simply the status of the offender which is the result of a conviction for having committed certain crimes."

## 2004:

## Added Reporting Requirements for Changes in Residence and Penalty for Failure to Comply

-Added Fla. Stat. 943.0435 (4)(b): Registrant shall report in person within 48 hours to sheriff's office after vacating a permanent residence and failing to establish a new permanent or temporary residence, and update all personal identification information required to be provided in Fla. Stat. 943.0435 (2)(b); the registrant must provide an address for the residence or other location that he/she is or will be occupying.

-Added Fla. Stat. 943.0435 (4)(c): A registrant who remains at a permanent residence after reporting intent to vacate it must report in person within 48 hours to the sheriff's office.  Failure to report is a second-degree felony.

## Prosecution and Strict Liability for Failure to Register

-Added Fla. Stat. 943.0435 (9)(b): Registrant may be prosecuted for any act or omission of this section in the county where the act or omission was committed, the county registrant last registered, or the county in which the original qualifying sexual offender conviction occurred.

-Added Fla. Stat. 943.0435 (9)(c): An arrest on charges of failure to register when the offender has been notified of his or her registration requirements, the service of an information or complaint for a violation of this section constitutes actual notice of duty to register. A registrant cannot assert in subsequent prosecution an affirmative defense of a lack of notice.

-Added Fla. Stat. 943.0435 (9)(d): Registration following arrest, service, or arraignment is not a defense.

## 2005:

### Semi-Annual Re-registration Imposed

-Added Fla. Stat. 943.0435 (14): Registrant must report in person each year during birthday month and six months after birth month to sheriff's office.  Re-registration shall include any changes to the personal identification information required at initial registration as listed in Fla. Stat. 943.0435 (14)(a)1, (14)(a)2, (14)(a)3, (14)(a)4.

### Criminal Penalties for Failure to Re-register and to Respond to Address Verification Correspondence

-Fla. Stat. 943.0435 (14)(a)4: Any registrant who fails to semi-annually re-register in person at the sheriff's office, or fails to respond to any address verification correspondence from FDLE within three weeks constitutes a third-degree felony.

## 2007:

### Expanded Qualifying Offenses and Juvenile Offenders Subject to Registration

-Fla. Stat. 943.0435 (1)(a)1: Added 794.05 ("Unlawful sexual activity with certain minors").

-Added Fla. Stat. 943.0435 (1)(d): A juvenile who was 14 years old or older at the time of their offense and has been adjudicated delinquent for committing, or attempting,

soliciting, or conspiring to commit, enumerated offenses in this state or similar offenses in another jurisdiction qualifies as a sexual offender.

## Definitions Added

-Added Fla. Stat. 943.0435 (1)(f): "Email address" definition as provided in Fla. Stat. 668.602(6) means a destination, commonly expressed as a string of characters, to which electronic mail may be sent or delivered.

-Added Fla. Stat. 943.0435(1)(g): Instant message name means an identifier that allows a person to communicate in real time with another person using the Internet.

## Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(a): Added email address and instant message name

-Fla. Stat. 943.0435 (2)(b): Added email address and instant message name

## Added Reporting Requirements

-Added Fla. Stat. 943.0435 (4)(d): Must register any email address or instant message name with FDLE prior to using them on or after October 1, 2007.  FDLE to establish online system for securely updating this information.

-Added Fla. Stat. 943.0435(3): The face of the registrant's driver's license or identification card must have the marking "943.0435, F.S."

## Re-Registration Requirements Imposed Quarterly on Certain Registrants

-Fla. Stat. 943.0435 (14)(a),(b): Registrants convicted of certain offenses in Florida or similar offenses in other jurisdictions required to re-register in person at the sheriff's office every 3 months for life.

## Ability to Petition for Removal from Lifetime Registration:  Denial and Constraint

-Fla. Stat. 943.0435 (11)(a)1. a.-g. Registrants permanently prohibited from filing for petition for removal from lifetime registration where their requirement to register was based upon an adult conviction of certain enumerated offenses.

-Fla. Stat. 943.0435 (11)(a)1: Period before otherwise qualified registrants may seek removal from lifetime registration increased from 20 years to "at least 25 years."

## 2009:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b): Added home telephone number and any cellphone number

## 2010:

### Definitions Added

-Fla. Stat. 943.0435 (1)(c), incorporating s. 775.21: "Transient residence" means a place or county where a person lives, remains, or is located for a period of 5 or more days in the aggregate during a calendar year and which is not the person's permanent or temporary address. The term includes, but is not limited to, a place where the person sleeps or seeks shelter and a location that has no specific street address.

### Reporting Requirements Expanded

-Fla. Stat. 943.0435 (2)(a): Reporting in person at sheriff's office within 48 hours transient residence within Florida, address, location or description, and dates of any current or known future temporary residence within Florida or out-of-state.

-Fla. Stat. 943.0435 (4)(b): A registrant who vacates a transient residence and fails to establish or maintain another residence must, within 48 hours after vacating transient residence, report in person to the sheriff's office and update all registration information. Transient registrant "must provide an address for the residence or other place that he or she is or will be located during the time in which he or she fails to establish or maintain a permanent or temporary residence."

-Fla. Stat. 943.0435 (4)(c): A transient registrant who remains at a transient residence after reporting an intent to vacate it shall, within 48 hours after that reporting, report in person to the agency for the purpose of reporting his or her transient address.  A transient who reports an intent to vacate his or her residence but fails to make a report that he or she has not changed his or her transient residence is guilty of a second-degree felony.

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b): Transient residence address.

**2012:**

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435 (1)(a)a.(I): Added 810.145(8) Video Voyeurism; and s. 787.06(3)(b), (d), (f), (g), or (h) Human Trafficking.

**2013:**

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b): Fingerprints and photograph.

**2014:**

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435 (1)(a)1. a. (I): Added s. 393.135(2) Sexual Misconduct with an Individual with a Developmental Disability; s. 394.4593(2) Sexual Misconduct with a Patient; s. 916.1075(2) Mentally Ill and Intellectually Disabled Defendants; Sexual Misconduct Prohibited.

### Definitions Added

-Fla. Stat. 943.0435 (1)(a)(2)(g): Incorporating s. 775.21(i) "'Internet identifier' means all electronic mail, chat, instant messenger, social networking, application software, or similar names used for Internet communication, but does not include a date of birth, social security number, or personal identification number (PIN)."

-Fla. Stat. 943.0435 (1)(a)(2)(h): Incorporating s. 775.21(n) "'Vehicles owned' means any motor vehicle as defined in s. 320.01, which is registered, coregistered, leased, titled, or rented by a sexual predator or sexual offender; a rented vehicle that a sexual predator or sexual offender is authorized to drive; or a vehicle for which a sexual predator or sexual offender is insured as a driver. The term also includes any motor vehicle as defined in s. 320.01, which is registered, coregistered, leased, titled, or rented by a person or persons residing at a sexual predator's or sexual offender's permanent residence for 5 or more consecutive days."

## Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(b):  Palm prints and make, model, color, vehicle identification number (VIN), and license tag number of all vehicles owned; all Internet identifiers; production of passport and documentation of immigration status; information regarding any professional licenses.

-Fla. Stat. 943.0435 (2)(b)2:  Volunteer status

-Added Fla. Stat. 943.0435 (2)(c): Registrant to "[p]rovide any other information determined necessary by the department, including criminal and corrections records; non-privileged personnel and treatment records; and evidentiary genetic markers, when available."

-Fla. Stat. 943.0435 (14)(c)(1): For reregistration: Added tattoos or other identifying marks; email addresses or Internet identifiers; vehicle identification number (VIN); palm prints; production of passport; if an alien, shall produce documents establishing his or her immigration status; information regarding any professional licenses.

-Fla. Stat. 943.0435 (14)(c)(2): Name, address, county of each institution and campus attended where registrant volunteers.

## Reporting Requirements Expanded

-Fla. Stat. 943.0435 (2)(b)2:  Volunteer status must be reported in person to sheriff's office within 48 hours after any change.

-Added Fla. Stat. 943.0435 (2)(b)3:  Registrant shall report in person to sheriff's office within 48 hours after any change in vehicles owned.

-Added Fla. Stat. 943.0435(4)(b)(2):  Transient registrant must report in person within 48 hours after establishing a transient residence and thereafter must report in person every 30 days.  Must provide addresses and locations of transient residence.  Reporting in person for this does not make the registrant exempt from the other reporting requirements.

-Added Fla. Stat. 943.0435 (4)(d): The failure of a registrant who maintains a transient residence to report in person to the sheriff's office every 30 days as required in Fla. Stat. 943.0435 (b)2 is punishable as a third-degree felony.

-Added Fla. Stat. 943.0435 (4)(e):  Registrant shall register all electronic mail addresses and Internet identifiers with the department before use.

-Fla. Stat. 943.0435 (6): County and local law enforcement agencies, in conjunction with the department, shall verify the addresses of sexual offenders who are under the care, custody, control, or supervision of the Department of Corrections.

-Fla. Stat. 943.0435 (7): Must report in person to the sheriff's office within 21 days before planned departure date if the intended residence of 5 days or more is outside of the United States.  Notification to include country of intended residence.

### Restrictions on Removal Petition Added

-Fla. Stat. 943.0435 (11)(4)(e): If sentenced to more than 25 years' supervision, registrant may not petition for removal from registry until the term of supervision for that conviction is completed.

## 2016:

### Qualifying Offenses Expanded

-Fla. Stat. 943.0435 (1): Added Fla. Stat. s. 895.03 Racketeering involving sexual offense.  Including "where defendant is victim's parent or guardian" to s. 787.01, s. 787.02, or s. 787.025(2)(c).

### Definitions Added

-Fla. Stat. 943.0435 (1)(a): Incorporating 775.21(i) "'Institution of higher education' means a career center, a community college, a college, a state university, or an independent postsecondary institution."

-Fla. Stat. 943.0435 (1)(d): Incorporating 775.21(a) "'Change in status at an institution of higher education' means the commencement or termination of enrollment, including, but not limited to, traditional classroom setting or online courses, or employment, whether for compensation or as a volunteer, at an institution of higher education or a change in location of enrollment or employment, whether for compensation or as a volunteer, at an institution of higher education."

-Fla. Stat. 943.0435 (1)(g): Incorporating 775.21(l) "'Professional license' means the document of authorization or certification issued by an agency of this state for a regulatory purpose, or by any similar agency in another jurisdiction for a regulatory purpose, to a person to engage in an occupation or to carry out a trade or business."

### Personal Identification Information Expanded

-Fla. Stat. 943.0435(4)(e)1: Registrant must report electronic mail addresses and Internet identifiers through the department's online system or in person at the sheriff's office before use.

-Added Fla. Stat. 943.0435 (4)(e)2: Registrant shall register all changes to home telephone numbers and cellular telephone numbers, including added and deleted numbers, all changes to employment information, and all changes in status related to enrollment, volunteering, or employment at institutions of higher education, through the department's online system or in person at the sheriff's office; in person at the Department of Corrections if the sexual offender is in the custody or control, or under the supervision, of the Department of Corrections; or in person at the Department of Juvenile Justice if the sexual offender is in the custody or control, or under the supervision, of the Department of Juvenile Justice. All changes must be reported within 48 hours.

### Added Reporting Requirements

-Fla. Stat. 943.0435 (7): For international travel, the sexual offender shall also provide travel information in person to the sheriff's office at least 21 days before he or she intends to travel, including, but not limited to, expected departure and return dates, flight number, airport of departure, cruise port of departure, or any other means of intended travel.

## 2017:

### Personal Identification Information Expanded

-Fla. Stat. 943.0435 (2)(a),(2)(b): Added "each Internet identifier's corresponding website homepage or application software name."

### Added Reporting Requirements

-Fla. Stat. 943.0435(4)(e)1: Registrant must report electronic email addresses, Internet identifiers, and each Internet identifier's corresponding website homepage or application software name within 48 hours after use.

### Reregistration Reporting Requirements

-Fla. Stat. 943.0435 (14)(c)(1): Added each Internet identifier's corresponding website homepage or application software name

## 2018:

## Definitions Added

-Fla. Stat. 943.0435 (1)(f), incorporating s. 775.21(k):    "Permanent residence" means a place where the person abides, lodges, or resides for 3 (formerly 5) or more consecutive days.

-Fla. Stat. 943.0435 (1)(f), incorporating s. 775.21(n):    "Temporary residence" means a place where the person abides, lodges, or resides, including, but not limited to, vacation, business, or personal travel destinations in or out of this state, for a period of 3 (formerly 5) or more days in the aggregate during any calendar year and which is not the person's permanent address or, for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled as a student for any period of time in this state.

-Fla. Stat. 943.0435 (1)(f), incorporating s. 775.21(o):    "Transient residence" means a county where a person lives, remains, or is located for a period of 3 (formerly 5) or more days in the aggregate during a calendar year and which is not the person's permanent or temporary address. The term includes, but is not limited to, a place where the person sleeps or seeks shelter and a location that has no specific street address.

## Mandatory Minimum Sentencing for Violations of Failure to Report

-Fla. Stat. 943.0435 (9)(b): For a felony violation of this section, committed on or after July 1, 2018, if the court does not impose a prison sentence, the court shall impose a mandatory minimum term of community control, as defined in s. 948.001, as follows:
    1.   For a first offense, a mandatory minimum term of 6 months with electronic monitoring.
    2.   For a second offense, a mandatory minimum term of 1 year with electronic monitoring.
    3.   For a third or subsequent offense, a mandatory minimum term of 2 years with electronic monitoring.

**1997 original list of qualifying offenses:**
1.      787.025 Luring or enticing a child;
2.      Chapter 794 Sexual Battery;
3.      796.03 Procuring person under age of 18 for prostitution;
4.      800.04 Lewd, lascivious, or indecent assault or act upon or in presence of child;
5.      827.071 Sexual performance by a child;
6.      847.0133 Protection of minors; prohibition of certain acts in connection with obscenity
7.      847.0135 Computer pornography;
8.      847.0145 Selling or buying of minors.

**2018 list of qualifying offenses:**
1.      393.135(2) Sexual Misconduct with an individual with a developmental disability
2.      394.4593(2) Sexual Misconduct with a patient
3.      787.01 Kidnapping
4.      787.02 False Imprisonment
5.      787.025(2)(c), Luring or enticing a child, where victim is a minor
6.      787.06(3)(b), (d), (f), or (g) Human Trafficking (former 787.06(3)(h))
7.      794.011 Sexual Battery, excluding 794.011(10)
8.      794.05 Unlawful sexual activity with certain minors (former 796.03; former 796.035)
9.      800.04 Lewd or lascivious offenses committed upon or in the presence of persons less than 16 years of age
10.     810.145(8) Video Voyeurism
11.     825.1025 Lewd or lascivious offenses committed upon or in the presence of an elderly person or disabled person
12.     827.071 Sexual performance by a child
13.     847.0133 Protection of minors; prohibition of certain acts in connection with obscenity;
14.     847.0135 Computer pornography; prohibited computer usage; traveling to meet minor (excluding 847.0135(6))
15.     847.0137 Transmission of pornography by electronic device or equipment prohibited
16.     847.0138 Transmission of material harmful to minors to a minor by electronic device or equipment prohibited
17.     847.0145 Selling or buying of minors
18.     895.03 Racketeering involving sexual offense
19.     916.1075(2) Mentally Ill and Intellectually Disabled Defendants; Sexual misconduct prohibited
20.     985.701(1) Juvenile Justice; Interstate Compact on Juveniles; Sexual misconduct prohibited

**2018 Statute (current as of 8.28.18)**

**943.0435   Sexual offenders required to register with the department; penalty.—**

**(1)**   As used in this section, the term:

    **(a)**   "Change in status at an institution of higher education" has the same meaning as provided in s. 775.21.

    **(b)**   "Convicted" means that there has been a determination of guilt as a result of a trial or the entry of a plea of guilty or nolo contendere, regardless of whether adjudication is withheld, and includes an adjudication of delinquency of a juvenile as specified in this section. Conviction of a similar offense includes, but is not limited to, a conviction by a federal or military tribunal, including courts-martial conducted by the Armed Forces of the United States, and includes a conviction or entry of a plea of guilty or nolo contendere resulting in a sanction in any state of the United States or other jurisdiction. A sanction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility.

    **(c)**   "Electronic mail address" has the same meaning as provided in s. 668.602.

    **(d)**   "Institution of higher education" has the same meaning as provided in s. 775.21.

    **(e)**   "Internet identifier" has the same meaning as provided in s. 775.21.

    **(f)**   "Permanent residence," "temporary residence," and "transient residence" have the same meaning as provided in s. 775.21.

    **(g)**   "Professional license" has the same meaning as provided in s. 775.21.

    **(h)**

        **1.**   "Sexual offender" means a person who meets the criteria in sub-subparagraph a., sub-subparagraph b., sub-subparagraph c., or sub-subparagraph d., as follows:

            **a.(I)**   Has been convicted of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or similar offenses in another jurisdiction: s. 393.135(2); s. 394.4593(2); s. 787.01, s. 787.02, or s. 787.025(2)(c), where the victim is a minor; s. 787.06(3) (b), (d), (f), or (g); former s. 787.06(3) (h); s. 794.011, excluding s. 794.011(10); s. 794.05; former s. 796.03; former s. 796.035; s. 800.04; s. 810.145(8); s. 825.1025; s. 827.071; s. 847.0133; s. 847.0135, excluding s. 847.0135(6); s. 847.0137; s. 847.0138; s. 847.0145; s. 895.03, if the court makes a written finding that the racketeering activity involved at least one sexual offense listed in this sub-sub-subparagraph or at least one offense listed in this sub-sub-subparagraph with sexual intent or motive; s. 916.1075(2); or s. 985.701(1); or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this sub-sub-subparagraph; and

            **(II)**   Has been released on or after October 1, 1997, from the sanction imposed for any conviction of an offense described in sub-sub-

subparagraph (I). For  purposes of sub-sub-subparagraph (I), a sanction imposed in this state or in any other jurisdiction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility;

**b.**   Establishes or maintains a residence in this state and who has not been designated as a sexual predator by a court of this state but who has been designated as a sexual predator, as a sexually violent predator, or by another sexual offender designation in another state or jurisdiction and was, as a result of such designation, subjected to registration or community or public notification, or both, or would be if the person were a resident of that state or jurisdiction, without regard to whether the person otherwise meets the criteria for registration as a sexual offender;

**c.**   Establishes or maintains a residence in this state who is in the custody or control of, or under the supervision of, any other state or jurisdiction as a result of a conviction for committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes or similar offense in another jurisdiction: s. 393.135(2); s. 394.4593(2); s. 787.01, s. 787.02, or s. 787.025(2)(c), where the victim is a minor; s. 787.06(3)(b), (d), (f), or (g); former s. 787.06(3)(h); s. 794.011, excluding s. 794.011(10); s. 794.05; former s. 796.03; former s. 796.035; s. 800.04; s. 810.145(8); s. 825.1025; s. 827.071; s. 847.0133; s. 847.0135, excluding s. 847.0135(6); s. 847.0137; s. 847.0138; s. 847.0145; s. 895.03, if the court makes a written finding that the racketeering activity involved at least one sexual offense listed in this sub-subparagraph or at least one offense listed in this sub-subparagraph with sexual intent or motive; s. 916.1075(2); or s. 985.701(1); or any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this sub-subparagraph; or

**d.**   On or after July 1, 2007, has been adjudicated delinquent for committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses proscribed in the following statutes in this state or similar offenses in another jurisdiction when the juvenile was 14 years of age or older at the time of the offense:

    **(I)**   Section 794.011, excluding s. 794.011(10); or

    **(II)**   Section 800.04(4)(a)2. where the victim is under 12 years of age or where the court finds sexual activity by the use of force or coercion;

    **(III)**   Section 800.04(5)(c)1. where the court finds molestation involving unclothed genitals;

    **(IV)**   Section 800.04(5)(d) where the court finds the use of force or coercion and unclothed genitals; or

        **(V)**    Any similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this sub-subparagraph.

    **2.**    For all qualifying offenses listed in sub-subparagraph 1.d., the court shall make a written finding of the age of the offender at the time of the offense.  For each violation of a qualifying offense listed in this subsection, except for a violation at s. 794.011, the court shall make a written finding of the age of the victim at the time of the offense. For a violation of s. 800.04(4), the court shall also make a written finding indicating whether the offense involved sexual activity and indicating whether the offense involved force or coercion. For a violation of s. 800.04(5), the court shall also make a written finding that the offense did or did not involve unclothed genitals or genital area and that the offense did or did not involve the use of force or coercion.

  **(i)**    "Vehicles owned" has the same meaning as provided in s. 775.21.

**(2)**    Upon initial registration, a sexual offender shall:

  **(a)**    Report in person at the sheriff's office:

    **1.**    In the county in which the offender establishes or maintains a permanent, temporary, or transient residence within 48 hours after:

        **a.**    Establishing permanent, temporary, or transient residence in this state; or

        **b.**    Being released from the custody, control, or supervision of the Department of Corrections or from the custody of a private correctional facility; or

    **2.**    In the county where he or she was convicted within 48 hours after being convicted for a qualifying offense for registration under this section if the offender is not in the custody or control of, or under the supervision of, the Department of Corrections, or is not in the custody of a private correctional facility.

Any change in the information required to be provided pursuant to paragraph (b), including, but not limited to, any change in the sexual offender's permanent, temporary, or transient residence; name; electronic mail addresses; Internet identifiers and each Internet identifier's corresponding website homepage or application software name; home telephone numbers and cellular telephone numbers; employment information; and any change in status at an institution of higher education after the sexual offender reports in person at the sheriff's office must be reported in the manner provided in subsections (4), (7), and (8).

  **(b)**    Provide his or her name; date of birth; social security number; race; sex; height; weight; hair and eye color; tattoos or other identifying marks; fingerprints; palm prints; photograph; employment information; address of permanent or legal residence or address of any current temporary residence, within the state or out of state, including a rural route address and a post office box; if no permanent or temporary address, any transient

residence within the state, address, location or description, and dates of any current or known future temporary residence within the state or out of state; the make, model, color, vehicle identification number (VIN), and license tag number of all vehicles owned; home telephone numbers and cellular telephone numbers; electronic mail addresses; Internet identifiers and each Internet identifier's corresponding website homepage or application software name; date and place of each conviction; and a brief description of the crime or crimes committed by the offender. A post office box may not be provided in lieu of a physical residential address. The sexual offender shall also produce his or her passport, if he or she has a passport, and, if he or she is an alien, shall produce or provide information about documents establishing his or her immigration status. The sexual offender shall also provide information about any professional licenses he or she has.

    **1.**   If the sexual offender's place of residence is a motor vehicle, trailer, mobile home, or manufactured home, as defined in chapter 320, the sexual offender shall also provide to the department through the sheriff's office written notice of the vehicle identification number; the license tag number; the registration number; and a description, including color scheme, of the motor vehicle, trailer, mobile home, or manufactured home. If the sexual offender's place of residence is a vessel, live-aboard vessel, or houseboat, as defined in chapter 327, the sexual offender shall also provide to the department written notice of the hull identification number; the manufacturer's serial number; the name of the vessel, live-aboard vessel, or houseboat; the registration number; and a description, including color scheme, of the vessel, live-aboard vessel, or houseboat.

    **2.**   If the sexual offender is enrolled or employed, whether for compensation or as a volunteer, at an institution of higher education in this state, the sexual offender shall also provide to the department the name, address, and county of each institution, including each campus attended, and the sexual offender's enrollment, volunteer, or employment status. The sheriff, the Department of Corrections, or the Department of Juvenile Justice shall promptly notify each institution of higher education of the sexual offender's presence and any change in the sexual offender's enrollment, volunteer, or employment status.

    **3.**   A sexual offender shall report in person to the sheriff's office within 48 hours after any change in vehicles owned to report those vehicle information changes.

**(c)**   Provide any other information determined necessary by the department, including criminal and corrections records; nonprivileged personnel and treatment records; and evidentiary genetic markers, when available.

When a sexual offender reports at the sheriff's office, the sheriff shall take a photograph, a set of fingerprints, and palm prints of the offender and forward the photographs, palm prints, and fingerprints to the department, along with the information provided by the sexual offender. The sheriff shall promptly provide to the department the information received from the sexual offender.

**(3)**  Within 48 hours after the report required under subsection (2), a sexual offender shall report in person at a driver license office of the Department of Highway Safety and Motor Vehicles, unless a driver license or identification card that complies with the requirements of s. 322.141(3) was previously secured or updated under s. 944.607. At the driver license office the sexual offender shall:

**(a)**  If otherwise qualified, secure a Florida driver license, renew a Florida driver license, or secure an identification card. The sexual offender shall identify himself or herself as a sexual offender who is required to comply with this section and shall provide proof that the sexual offender reported as required in subsection (2). The sexual offender shall provide any of the information specified in subsection (2), if requested. The sexual offender shall submit to the taking of a photograph for use in issuing a driver license, renewed license, or identification card, and for use by the department in maintaining current records of sexual offenders.

**(b)**  Pay the costs assessed by the Department of Highway Safety and Motor Vehicles for issuing or renewing a driver license or identification card as required by this section. The driver license or identification card issued must be in compliance with s. 322.141(3).

**(c)**  Provide, upon request, any additional information necessary to confirm the identity of the sexual offender, including a set of fingerprints.

**(4)**

**(a)**  Each time a sexual offender's driver license or identification card is subject to renewal, and, without regard to the status of the offender's driver license or identification card, within 48 hours after any change in the offender's permanent, temporary, or transient residence or change in the offender's name by reason of marriage or other legal process, the offender shall report in person to a driver license office, and is subject to the requirements specified in subsection (3). The Department of Highway Safety and Motor Vehicles shall forward to the department all photographs and information provided by sexual offenders. Notwithstanding the restrictions set forth in s. 322.142, the Department of Highway Safety and Motor Vehicles may release a reproduction of a color-photograph or digital-image license to the Department of Law Enforcement for purposes of public notification of sexual offenders as provided in this section and ss. 943.043 and 944.606. A sexual offender who is unable to secure or update a driver license or an identification card with the Department of Highway Safety and Motor Vehicles as provided in subsection (3) and this subsection shall also report any change in the sexual offender's permanent, temporary, or transient residence or change in the offender's name by reason of marriage or other legal process within 48 hours after the change to the sheriff's office in the county where the offender resides or is located and provide confirmation that he or she reported such information to the Department of Highway Safety and Motor Vehicles. The reporting requirements under this paragraph do not negate the requirement for a sexual offender to obtain a Florida driver license or an identification card as required in this section.

**(b)**

    **1.**   A sexual offender who vacates a permanent, temporary, or transient residence and fails to establish or maintain another permanent, temporary, or transient residence shall, within 48 hours after vacating the permanent, temporary, or transient residence, report in person to the sheriff's office of the county in which he or she is located. The sexual offender shall specify the date upon which he or she intends to or did vacate such residence. The sexual offender must provide or update all of the registration information required under paragraph (2)(b). The sexual offender must provide an address for the residence or other place that he or she is or will be located during the time in which he or she fails to establish or maintain a permanent or temporary residence.

    **2.**   A sexual offender shall report in person at the sheriff's office in the county in which he or she is located within 48 hours after establishing a transient residence and thereafter must report in person every 30 days to the sheriff's office in the county in which he or she is located while maintaining a transient residence. The sexual offender must provide the addresses and locations where he or she maintains a transient residence. Each sheriff's office shall establish procedures for reporting transient residence information and provide notice to transient registrants to report transient residence information as required in this subparagraph. Reporting to the sheriff's office as required by this subparagraph does not exempt registrants from any reregistration requirement. The sheriff may coordinate and enter into agreements with police departments and other governmental entities to facilitate additional reporting sites for transient residence registration required in this subparagraph. The sheriff's office shall, within 2 business days, electronically submit and update all information provided by the sexual offender to the department.

**(c)**   A sexual offender who remains at a permanent, temporary, or transient residence after reporting his or her intent to vacate such residence shall, within 48 hours after the date upon which the offender indicated he or she would or did vacate such residence, report in person to the agency to which he or she reported pursuant to paragraph (b) for the purpose of reporting his or her address at such residence. When the sheriff receives the report, the sheriff shall promptly convey the information to the department. An offender who makes a report as required under paragraph (b) but fails to make a report as required under this paragraph commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(d)**   The failure of a sexual offender who maintains a transient residence to report in person to the sheriff's office every 30 days as required in subparagraph (b)2. is punishable as provided in subsection (9).

**(e)**

    **1.**   A sexual offender shall register all electronic mail addresses and Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, with the department through the department's online system or in person at the sheriff's office within 48 hours after using such electronic mail addresses and Internet identifiers. If the sexual offender is in the

custody or control, or under the supervision, of the Department of Corrections, he or she must report all electronic mail addresses and Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, to the Department of Corrections before using such electronic mail addresses or Internet identifiers. If the sexual offender is in the custody or control, or under the supervision, of the Department of Juvenile Justice, he or she must report all electronic mail addresses and Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, to the Department of Juvenile Justice before using such electronic mail addresses or Internet identifiers.

**2.**   A sexual offender shall register all changes to home telephone numbers and cellular telephone numbers, including added and deleted numbers, all changes to employment information, and all changes in status related to enrollment, volunteering, or employment at institutions of higher education, through the department's online system; in person at the sheriff's office; in person at the Department of Corrections if the sexual offender is in the custody or control, or under the supervision, of the Department of Corrections; or in person at the Department of Juvenile Justice if the sexual offender is in the custody or control, or under the supervision, of the Department of Juvenile Justice. All changes required to be reported under this subparagraph must be reported within 48 hours after the change.

**3.**   The department shall establish an online system through which sexual offenders may securely access, submit, and update all changes in status to electronic mail addresses; Internet identifiers and each Internet identifier's corresponding website homepage or application software name; home telephone numbers and cellular telephone numbers; employment information; and institution of higher education information.

**(5)**   This section does not apply to a sexual offender who is also a sexual predator, as defined in s. 775.21. A sexual predator must register as required under s. 775.21.

**(6)**   County and local law enforcement agencies, in conjunction with the department, shall verify the addresses of sexual offenders who are not under the care, custody, control, or supervision of the Department of Corrections, and may verify the addresses of sexual offenders who are under the care, custody, control, or supervision of the Department of Corrections, in a manner that is consistent with the provisions of the federal Adam Walsh Child Protection and Safety Act of 2006 and any other federal standards applicable to such verification or required to be met as a condition for the receipt of federal funds by the state. Local law enforcement agencies shall report to the department any failure by a sexual offender to comply with registration requirements.

**(7)**   A sexual offender who intends to establish a permanent, temporary, or transient residence in another state or jurisdiction other than the State of Florida shall report in person to the sheriff of

the county of current residence within 48 hours before the date he or she intends to leave this state to establish residence in another state or jurisdiction or at least 21 days before the date he or she intends to travel if the intended residence of 5 days or more is outside of the United States. Any travel that is not known by the sexual offender 21 days before the departure date must be reported in person to the sheriff's office as soon as possible before departure. The sexual offender shall provide to the sheriff the address, municipality, county, state, and country of intended residence. For international travel, the sexual offender shall also provide travel information, including, but not limited to, expected departure and return dates, flight number, airport of departure, cruise port of departure, or any other means of intended travel. The sheriff shall promptly provide to the department the information received from the sexual offender. The department shall notify the statewide law enforcement agency, or a comparable agency, in the intended state, jurisdiction, or country of residence of the sexual offender's intended residence. The failure of a sexual offender to provide his or her intended place of residence is punishable as provided in subsection (9).

**(8)**   A sexual offender who indicates his or her intent to establish a permanent, temporary, or transient residence in another state, a jurisdiction other than the State of Florida, or another country and later decides to remain in this state shall, within 48 hours after the date upon which the sexual offender indicated he or she would leave this state, report in person to the sheriff to which the sexual offender reported the intended change of permanent, temporary, or transient residence, and report his or her intent to remain in this state. The sheriff shall promptly report this information to the department. A sexual offender who reports his or her intent to establish a permanent, temporary, or transient residence in another state, a jurisdiction other than the State of Florida, or another country but who remains in this state without reporting to the sheriff in the manner required by this subsection commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(9)**

    **(a)**   A sexual offender who does not comply with the requirements of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

    **(b)**   For a felony violation of this section, excluding subsection (13), committed on or after July 1, 2018, if the court does not impose a prison sentence, the court shall impose a mandatory minimum term of community control, as defined in s. 948.001, as follows:

        **1.**   For a first offense, a mandatory minimum term of 6 months with electronic monitoring.

        **2.**   For a second offense, a mandatory minimum term of 1 year with electronic monitoring.

        **3.**   For a third or subsequent offense, a mandatory minimum term of 2 years with electronic monitoring.

    **(c)**   A sexual offender who commits any act or omission in violation of this section may be prosecuted for the act or omission in the county in which the act or omission was committed, in the county of the last registered address of the sexual offender, in the

county in which the conviction occurred for the offense or offenses that meet the criteria for designating a person as a sexual offender, in the county where the sexual offender was released from incarceration, or in the county of the intended address of the sexual offender as reported by the offender prior to his or her release from incarceration.

**(d)**   An arrest on charges of failure to register when the offender has been provided and advised of his or her statutory obligations to register under subsection (2), the service of an information or a complaint for a violation of this section, or an arraignment on charges for a violation of this section constitutes actual notice of the duty to register. A sexual offender's failure to immediately register as required by this section following such arrest, service, or arraignment constitutes grounds for a subsequent charge of failure to register. A sexual offender charged with the crime of failure to register who asserts, or intends to assert, a lack of notice of the duty to register as a defense to a charge of failure to register shall immediately register as required by this section. A sexual offender who is charged with a subsequent failure to register may not assert the defense of a lack of notice of the duty to register. Registration following such arrest, service, or arraignment is not a defense and does not relieve the sexual offender of criminal liability for the failure to register.

**(10)**   The department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, the Department of Juvenile Justice, any law enforcement agency in this state, and the personnel of those departments; an elected or appointed official, public employee, or school administrator; or an employee, agency, or any individual or entity acting at the request or upon the direction of any law enforcement agency is immune from civil liability for damages for good faith compliance with the requirements of this section or for the release of information under this section, and shall be presumed to have acted in good faith in compiling, recording, reporting, or releasing the information. The presumption of good faith is not overcome if a technical or clerical error is made by the department, the Department of Highway Safety and Motor Vehicles, the Department of Corrections, the Department of Juvenile Justice, the personnel of those departments, or any individual or entity acting at the request or upon the direction of any of those departments in compiling or providing information, or if information is incomplete or incorrect because a sexual offender fails to report or falsely reports his or her current place of permanent, temporary, or transient residence.

**(11)**   Except as provided in s. 943.04354, a sexual offender shall maintain registration with the department for the duration of his or her life unless the sexual offender has received a full pardon or has had a conviction set aside in a postconviction proceeding for any offense that meets the criteria for classifying the person as a sexual offender for purposes of registration. However, a sexual offender shall be considered for removal of the requirement to register as a sexual offender only if the person:

**(a)**

**1.**   Has been lawfully released from confinement, supervision, or sanction, whichever is later, for at least 25 years and has not been arrested for any felony or

misdemeanor offense since release, provided that the sexual offender's requirement to register was not based upon an adult conviction:

    **a.**   For a violation of s. <u>787.01</u> or s. <u>787.02</u>;

    **b.**   For a violation of s. <u>794.011</u>, excluding s. <u>794.011</u>(10);

    **c.**   For a violation of s. <u>800.04</u>(4)(a)2. where the court finds the offense involved a victim under 12 years of age or sexual activity by the use of force or coercion;

    **d.**   For a violation of s. <u>800.04</u>(5)(b);

    **e.**   For a violation of s. <u>800.04</u>(5)(c)2. where the court finds the offense involved the use of force or coercion and unclothed genitals or genital area;

    **f.**   For a violation of s. <u>825.1025</u>(2)(a);

    **g.**   For any attempt or conspiracy to commit any such offense;

    **h.**   For a violation of similar law of another jurisdiction; or

    **i.**   For a violation of a similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this subparagraph.

**2.**   If the sexual offender meets the criteria in subparagraph 1., the sexual offender may, for the purpose of removing the requirement for registration as a sexual offender, petition the criminal division of the circuit court of the circuit:

    **a.**   Where the conviction or adjudication occurred, for a conviction in this state;

    **b.**   Where the sexual offender resides, for a conviction of a violation of similar law of another jurisdiction; or

    **c.**   Where the sexual offender last resided, for a sexual offender with a conviction of a violation of similar law of another jurisdiction who no longer resides in this state.

**3.**   The court may grant or deny relief if the offender demonstrates to the court that he or she has not been arrested for any crime since release; the requested relief complies with the federal Adam Walsh Child Protection and Safety Act of 2006 and any other federal standards applicable to the removal of registration requirements for a sexual offender or required to be met as a condition for the receipt of federal funds by the state; and the court is otherwise satisfied that the offender is not a current or potential threat to public safety. The state attorney in the circuit in which the petition is filed must be given notice of the petition at least 3 weeks before the hearing on the matter. The state attorney may present evidence in opposition to the requested relief or may otherwise demonstrate the reasons why the petition should be denied. If the court denies the petition, the court may set a future date at which the sexual offender may again petition the court for relief, subject to the standards for relief provided in this subsection.

**4.**   The department shall remove an offender from classification as a sexual offender for purposes of registration if the offender provides to the department a certified copy of the court's written findings or order that indicates that the

offender is no longer required to comply with the requirements for registration as a sexual offender.

**(b)**   As defined in sub-subparagraph (1)(h)1.b. must maintain registration with the department for the duration of his or her life until the person provides the department with an order issued by the court that designated the person as a sexual predator, as a sexually violent predator, or by another sexual offender designation in the state or jurisdiction in which the order was issued which states that such designation has been removed or demonstrates to the department that such designation, if not imposed by a court, has been removed by operation of law or court order in the state or jurisdiction in which the designation was made, and provided such person no longer meets the criteria for registration as a sexual offender under the laws of this state.

**(12)**   The Legislature finds that sexual offenders, especially those who have committed offenses against minors, often pose a high risk of engaging in sexual offenses even after being released from incarceration or commitment and that protection of the public from sexual offenders is a paramount government interest. Sexual offenders have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Releasing information concerning sexual offenders to law enforcement agencies and to persons who request such information, and the release of such information to the public by a law enforcement agency or public agency, will further the governmental interests of public safety. The designation of a person as a sexual offender is not a sentence or a punishment but is simply the status of the offender which is the result of a conviction for having committed certain crimes.

**(13)**   Any person who has reason to believe that a sexual offender is not complying, or has not complied, with the requirements of this section and who, with the intent to assist the sexual offender in eluding a law enforcement agency that is seeking to find the sexual offender to question the sexual offender about, or to arrest the sexual offender for, his or her noncompliance with the requirements of this section:

**(a)**   Withholds information from, or does not notify, the law enforcement agency about the sexual offender's noncompliance with the requirements of this section, and, if known, the whereabouts of the sexual offender;

**(b)**   Harbors, or attempts to harbor, or assists another person in harboring or attempting to harbor, the sexual offender; or

**(c)**   Conceals or attempts to conceal, or assists another person in concealing or attempting to conceal, the sexual offender; or

**(d)**   Provides information to the law enforcement agency regarding the sexual offender that the person knows to be false information,

commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(14)**

**(a)**   A sexual offender must report in person each year during the month of the sexual offender's birthday and during the sixth month following the sexual offender's birth

month to the sheriff's office in the county in which he or she resides or is otherwise located to reregister.

**(b)**   However, a sexual offender who is required to register as a result of a conviction for:

    **1.**   Section 787.01 or s. 787.02 where the victim is a minor;

    **2.**   Section 794.011, excluding s. 794.011(10);

    **3.**   Section 800.04(4)(a)2. where the court finds the offense involved a victim under 12 years of age or sexual activity by the use of force or coercion;

    **4.**   Section 800.04(5)(b);

    **5.**   Section 800.04(5)(c)1. where the court finds molestation involving unclothed genitals or genital area;

    **6.**   Section 800.04(5)(c)2. where the court finds molestation involving the use of force or coercion and unclothed genitals or genital area;

    **7.**   Section 800.04(5)(d) where the court finds the use of force or coercion and unclothed genitals or genital area;

    **8.**   Section 825.1025(2)(a);

    **9.**   Any attempt or conspiracy to commit such offense;

    **10.**   A violation of a similar law of another jurisdiction; or

    **11.**   A violation of a similar offense committed in this state which has been redesignated from a former statute number to one of those listed in this paragraph, must reregister each year during the month of the sexual offender's birthday and every third month thereafter.

**(c)**   The sheriff's office may determine the appropriate times and days for reporting by the sexual offender, which must be consistent with the reporting requirements of this subsection. Reregistration must include any changes to the following information:

    **1.**   Name; social security number; age; race; sex; date of birth; height; weight; tattoos or other identifying marks; hair and eye color; address of any permanent residence and address of any current temporary residence, within the state or out of state, including a rural route address and a post office box; if no permanent or temporary address, any transient residence within the state; address, location or description, and dates of any current or known future temporary residence within the state or out of state; all electronic mail addresses or Internet identifiers and each Internet identifier's corresponding website homepage or application software name; all home telephone numbers and cellular telephone numbers; employment information; the make, model, color, vehicle identification number (VIN), and license tag number of all vehicles owned; fingerprints; palm prints; and photograph. A post office box may not be provided in lieu of a physical residential address. The sexual offender shall also produce his or her passport, if he or she has a passport, and, if he or she is an alien, shall produce or provide information about documents establishing his or her immigration status. The sexual offender shall also provide information about any professional licenses he or she has.

    **2.**   If the sexual offender is enrolled or employed, whether for compensation or as a volunteer, at an institution of higher education in this state, the sexual

offender shall also provide to the department the name, address, and county of each institution, including each campus attended, and the sexual offender's enrollment, volunteer, or employment status.

**3.**  If the sexual offender's place of residence is a motor vehicle, trailer, mobile home, or manufactured home, as defined in chapter 320, the sexual offender shall also provide the vehicle identification number; the license tag number; the registration number; and a description, including color scheme, of the motor vehicle, trailer, mobile home, or manufactured home. If the sexual offender's place of residence is a vessel, live-aboard vessel, or houseboat, as defined in chapter 327, the sexual offender shall also provide the hull identification number; the manufacturer's serial number; the name of the vessel, live-aboard vessel, or houseboat; the registration number; and a description, including color scheme, of the vessel, live-aboard vessel, or houseboat.

**4.**  Any sexual offender who fails to report in person as required at the sheriff's office, who fails to respond to any address verification correspondence from the department within 3 weeks of the date of the correspondence, who fails to report all electronic mail addresses and all Internet identifiers, and each Internet identifier's corresponding website homepage or application software name, or who knowingly provides false registration information by act or omission commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**(d)**  The sheriff's office shall, within 2 working days, electronically submit and update all information provided by the sexual offender to the department in a manner prescribed by the department.

**History.**—s. 8, ch. 97-299; s. 7, ch. 98-81; s. 114, ch. 99-3; s. 3, ch. 2000-207; s. 3, ch. 2000-246; s. 3, ch. 2002-58; s. 2, ch. 2004-371; s. 9, ch. 2005-28; s. 3, ch. 2006-200; s. 4, ch. 2006-299; s. 159, ch. 2007-5; s. 10, ch. 2007-143; s. 4, ch. 2007-207; s. 2, ch. 2007-209; s. 3, ch. 2009-194; s. 4, ch. 2010-92; s. 4, ch. 2012-19; s. 11, ch. 2012-97; s. 11, ch. 2013-116; s. 10, ch. 2014-4; s. 5, ch. 2014-5; s. 26, ch. 2014-160; s. 99, ch. 2015-2; ss. 10, 51, ch. 2016-24; s. 3, ch. 2016-104; s. 2, ch. 2017-170; s. 2, ch. 2018-105.